Leo Joseph WHITE,
Plaintiff-Respondent,

v.

ST. LOUIS–SAN FRANCISCO
RAILWAY COMPANY,
Defendant-Appellant.

No. 39958.

Missouri Court of Appeals,
Eastern District,
Division One.

May 27, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 14, 1980.

Application to Transfer Denied
Sept. 9, 1980.

---

Jo B. Gardner, Monett, for plaintiff-respondent.

Gerald D. Morris, St. Louis, for defendant-appellant.

SIMON, Judge.

Plaintiff, Leo White, filed an action for damages under the Federal Employer's Liability Act (F.E.L.A.), 45 U.S.C.A. 51 et seq. Plaintiff alleged that he sustained injuries while performing his job as a locomotive engineer for defendant. Defendant St. Louis-San Francisco Railway Co. ("Frisco") appeals from a judgment of $90,000 entered for plaintiff as a result of a jury verdict. For reasons hereinafter stated, we affirm.

Plaintiff served as an engineer on Frisco's local trains between Monett, Missouri and Tulsa, Oklahoma, a distance of 144 miles. The trips lasted as long as sixteen hours, and engineers on this route ("run") worked six days a week. White operated a general purpose diesel locomotive known as GP–7. The engineer's seat and controls are located on the right side of the cab. During switching operations along the run, the engineer frequently had to lean out the window to see the switchman's signals, and in doing so his back and right side made contact with the inside edge of the metal window frame, which was molded into a half circle about one-fourth to one-half inch. Originally, the locomotives were equipped with foam rubber pads, called flopover pads, which could be placed over the window edge when the window was open to prevent the engineer from coming into contact with the window edge. As the pads wore out they were replaced with rigid pads, affixed to the exterior of the cab, which did not prevent contact with the window edge. Plaintiff and other engineers complained to their union officials and on their federal work reports that the rigid pads were inadequate and that contact with the exposed window edge caused discomfort. Some of the pads were fixed. In some cases, engineers were supplied supplemental pads by defendant. Plaintiff requested a supplemental pad but never received it.

During the last six months of active service, plaintiff used a cane to walk. This fact came to the attention of his supervisor, who recommended that he have a physical examination. As a result of the examination which revealed high blood pressure plaintiff was given a ninety day leave of absence. At the same time he decided that he was disabled and unable to work due to a back problem. After treatment by several doctors for a variety of medical problems, some of which bear no relation to plaintiff's

job, he filed this lawsuit alleging he had been permanently disabled by defendant's negligence in failing to furnish a reasonably safe place to work. More particularly, he claimed that his back and kidneys were injured when he leaned out the locomotive's window without adequate protective pads. For a somewhat more detailed statement of the facts of the case, see *White v. St Louis-San Francisco Ry. Co.*, 539 S.W.2d 565 (Mo. App.1976).

On appeal the defendant raises five points. First, the defendant contends the trial court erred in that it should have sustained defendant's motion for a directed verdict at the close of all the evidence or in the alternative his post-trial motion. The defendant argues that the plaintiff failed to make a submissible case, in that, the expert medical evidence in the whole case failed to make a submissible case permitting a jury to find that plaintiff received any injury whatsoever as a result, in whole or in part, of defendant's negligence. Second, defendant contends that the trial court erred in admitting into evidence and allowing the plaintiff to read to the jury numerous notations written on the back of his copies of daily time reports required by the defendant. The notations, which were written by the plaintiff, complained of inadequate padding on the defendant's locomotives causing plaintiff's back and kidneys to be injured. Third, defendant contends the trial court erred in abusing its discretion by overruling defendant's motion for a mistrial arising out of an episode in which the trial judge fell asleep. Fourth, the defendant contends that the trial court erred in giving a verdict directing instruction because the first paragraph of the instruction constituted a gross roving commission. Fifth, defendant contends the trial court erred in denying its motion for new trial because the verdict of $90,000 is so excessive as to conclusively establish the passion and prejudice of the jury. Defendant claims in the alternative the trial court should have remitted $75,000 of the $90,000 verdict under the rule of uniformity.

Plaintiff did not appeal but prays for dismissal of defendant's appeal, for damages on the basis that the appeal by defendant is frivolous and further prays that if the judgment is affirmed, it should bear interest of 9% from the date of its entry or from the effective date of the law increasing the rate of interest on judgments.

■ Defendant's first contention is that the trial court erred in overruling defendant's motion for a directed verdict at the close of all the evidence, and also in overruling the defendant's post-trial motion for judgment in accordance with its motion for directed verdict. Defendant argues that when the expert medical evidence in the case is viewed in the light most favorable to the plaintiff the court must conclude that plaintiff failed to make a submissible case permitting a jury to find that plaintiff received any injury in whole or in part, as a result of the defendant's negligence.

The defendant states in its brief that the evidence as to what plaintiff is claiming as to injury is so "confused", "conflicting" and "speculative" that it amounts to no evidence at all worthy of submission to a jury.

The standard of review to be used in determining whether sufficient evidence has been presented in order to make a submissible case is well established. We must "view the evidence in the light most favorable to the plaintiff and disregard defendant's contrary evidence." *Kiger v. Terminal Railroad Association of St. Louis*, 311 S.W.2d 5, 8[1] (Mo.1958). The defendant attempts to substantiate its claim by attacking the testimony of the plaintiff's primary medical expert, Dr. Robert Murphy, D.O., of Monett, Missouri. Dr. Murphy, who testified by deposition, treated the plaintiff on approximately 43 occasions between October 11, 1971 and March 15, 1974. Dr. Murphy found the plaintiff to have (1) strain of the lumbar and thoracic areas, (2) anemia and (3) mild nephrosis or irritation of the kidneys. Dr. Murphy was of the opinion that the anemia was not caused by the plaintiff's work, but found a definite correlation between the kidney irritation and the plaintiff's occupation. Dr. Murphy also found the strain of the lumbar and

thoracic area to have been related to plaintiff's job of operating a locomotive while leaning on an unpadded window sill. Dr. Murphy based his opinions, at least in part, on his assumption that plaintiff "had been doing that work for years" and because he could find "no other explanation."

The defendant presents four reasons why Dr. Murphy's opinions are not worthy of jury consideration and therefore fail to establish a submissible case of injury.

Defendant's first point concerns whether or not the plaintiff in fact had diabetes. Dr. W. I. Glass, M.D., who testified by deposition for the defendant, had been treating the plaintiff from 1957 until 1975. Dr. Glass testified that he had determined the plaintiff to have had diabetes as early as September or October of 1971. Dr. Jacques P. Schaerer, who testified by deposition for the plaintiff, also found plaintiff to be a diabetic. Dr. Murphy on the other hand never found any indication of diabetes from any of the urinalysis which were performed on the plaintiff.

Defendant's second point concerns the plaintiff's blood pressure. Dr. Murphy found the plaintiff to have a very slight problem, but he did not consider the plaintiff to be a high blood pressure patient. Dr. Glass was of the opinion that the plaintiff had a high blood pressure problem and prescribed medication for the condition as early as 1957 and continued to prescribe various types of blood pressure medicine into 1975. It was not conclusively established whether the plaintiff in fact took the medications prescribed for the blood pressure condition and if he did, with what frequency.

Defendant's third point concerns what appears from the record to be Dr. Murphy's false assumption that the plaintiff had been subjected to the unpadded window sill for a period considerably longer than the plaintiff himself had testified to.

The fourth point which the defendant refers to as "the most telling blow to plaintiff's injury case" involves the length of the plaintiff's right leg. At trial the defendant read into evidence certain excerpts from the Frisco Employee's Hospital Association case record. A March 14, 1946 record was read to the jury stating that plaintiff had complained of a pain in his lower back for a three month duration. Another hospital record dated September 19, 1950 was also read to the jury. That record stated that plaintiff for the past three years has had recurring backaches and irritation of the bladder. The last hospital record read to the jury was dated November 11, 1953. It stated plaintiff "had back trouble for years but when fixed right shoe to rise one and one half inches to compensate for short leg this disappeared." Defendant alleges that Dr. Murphy "specifically checked plaintiff to make sure that plaintiff did not have a short leg causing the back problem." It is not entirely clear from the record whether Dr. Murphy did in fact check the plaintiff for uneven leg length.

After setting out these inconsistencies the defendant concludes that Dr. Murphy's opinions were based on the absence of the diabetes, high blood pressure, and the short right leg and that the establishment of these conditions by conclusive proof should render Dr. Murphy's testimony meaningless and entitled to no weight whatsoever. The defendant cites two cases in furtherance of his argument.

Defendant's first case is *Kiger v. Terminal Railroad Association of St. Louis, supra* at 13–14[18]. In that case the testifying doctor twice stated his opinion that plaintiff "probably" sustained a ruptured disc. On two other occasions he used an expression which indicated it "might" have occurred. Finally when asked the same question again the doctor stated that his opinion was based on reasonable medical certainty and then when asked later he refused to state that it was. The court determined that the "[p]laintiff [was] not entitled to the most favorable inferences that may be drawn from that kind of testimony, as such would require the jury to speculate as to which answer would be accepted." The defendant in this appeal does not challenge the degree of certainty with which Dr. Murphy holds his opinions, but rather the accuracy and

correctness of the opinions themselves. Although there is conflicting testimony from the medical experts in this case as to the plaintiff's physical condition, Dr. Murphy's opinions were clear.

The defendant also relies on *Barnhart v. Ripka*, 297 S.W.2d 787, 791[7] (Mo.App. 1956). However, his reliance is misplaced. There was no objection to the competency of Dr. Murphy as a medical expert. Dr. Murphy's training and experience were presented at the outset. The fact that Dr. Murphy's opinions differ from the opinions of some of the other medical experts in this case does not make his testimony, when read as a whole, worthless as containing no probative value. It is for the jury to weigh, balance and harmonize the opinions of qualified and competent expert witnesses. See, *Breland v. Gulf, Mobile and Ohio Railroad*, 325 S.W.2d 9, 14–15[1] (Mo.1959)[1], where our Supreme Court said:

> "The railroad company's contention that the evidence as to injury, causal connection between the accident and injury, and permanence of injury is vague, speculative and confusing stands for disapproval. The railroad company has carefully pointed out the weaknesses, inconsistencies and incongruities in plaintiff's medical evidence and has emphasized the portions of medical evidence favorable to the railroad company. These considerations, however, were for the jury and not for this court to weigh, balance and harmonize."

If Dr. Murphy was in fact mistaken about the number of years plaintiff had been leaning on the sometimes unpadded window sill in performing his duties as a locomotive engineer, this discrepancy was adequately brought before the jury in the cross-examination of Dr. Murphy by the defendant. The testimony of the plaintiff himself revealed when his problem with the unpadded sill began. The evidence was before the jury on this matter. We must assume the jury took these factors into consideration when weighing Dr. Murphy's testimony. It is not the function of this court to replace the judgment of the jury on these issues with our own.

■ Secondly, defendant contends that the trial court erred when it admitted into evidence and allowed plaintiff to read plaintiff's handwritten notations concerning inadequate padding on the locomotive causing plaintiff's back and kidneys to be injured, on the ground that said notations were self-serving statements, manufactured evidence, not coming under the business records, verbal acts or proof of statement exceptions to the hearsay rule, or any other exception thereto.

Plaintiff testified he was required to make a federal work report and leave it on the locomotive listing conditions of the locomotive which he thought should be corrected. These reports were picked up by the defendant's mechanical employees and were kept by the defendant in the ordinary course of business. Plaintiff requested the reports in pre-trial discovery, but they had been destroyed for the period involved herein, since defendant was required by law to keep the records for three years. Plaintiff further testified that on some of the federal work reports he made notations concerning the absence of or inadequacy of the padding and his physical problems resulting therefrom. Also, plaintiff testified that he also made daily time reports on a printed form provided by the defendant and that on the back of his copy of the daily time reports, he made the exact same notations as he had made on the federal work reports concerning the padding and his hurting. Plaintiff was allowed, over defendant's objection, to read the notations. The time records, with the notations on the back, were also admitted into evidence, over defendant's objection. The trial judge admitted the evidence but instructed the jury that the evidence was being admitted for the limited purpose of notice to the defendant, but not as proof of injury.

The evidence was not being offered to establish the truth or falsity of what was contained therein but rather to establish

---

1. The sole question for review in this case was whether the verdict of $75,000 was excessive.

notice to the defendant of the condition concerning the padding, therefore the evidence was not hearsay.[2]

Our Western District Court recognized this principle in *Rinker v. Ford Motor Co.*, 567 S.W.2d 655, 663[9] (Mo.App.1978).[3] The court, citing *Miller v. Brunson Const. Co.*, 250 S.W.2d 958[9] (Mo.1952), said:

> " 'Where, regardless of the truth or the falsity of a statement, the fact that it has been made is relevant, the hearsay rule does not apply, but the statement may be shown. Evidence as to the making of such statement is not secondary but primary, for the statement itself may constitute a fact in issue, or be circumstantially relevant as to the existence of such a fact.' " [citation omitted]

Having determined that the admission of the evidence was proper on the basis that it was not hearsay, there is no need to review the various exceptions which defendant cites as not being applicable.

■ Defendant's third contention is that the trial court prejudicially erred in overruling its motion for mistrial grounded on an episode in which the trial judge dozed during the reading of plaintiff's treating doctor's deposition. Basically the issue presented is whether the defendant was prejudiced by this judicial conduct. Defendant relies on *Fitzpatrick v. St. Louis-San Francisco Ry. Co.*, 327 S.W.2d 801 (Mo. 1959) as being informative on the issue. However, we have found the *Fitzpatrick* case to be of no assistance since it did not involve judicial conduct.

Our review of the record does not substantiate defendant's claim of prejudice. See, *Wardenburg v. White*, 518 S.W.2d 152, 155[6] (Mo.App.1974). We rule this point against defendant.

■ Defendant's fourth contention is that the first paragraph of Instruction No. 2, the verdict director, was a roving commission, and required the jury to speculate on the evidence and to base its verdict on matters in evidence for which defendant was not liable. The challenged portion of Instruction No. 2 submitted a theory of negligence approved in MAI 24.01. As this court noted in *Griffith v. St. Louis-San Francisco Ry. Co.*, 559 S.W.2d 278, 280[1] (Mo.App.1977), cert. denied, 436 U.S. 926, 98 S.Ct. 2821, 56 L.Ed.2d 769 (1978), we are bound by Supreme Court rules and decisions which mandate the use of this verdict directing instruction to the exclusion of other instructions on the same subject. See, Committee's Comments, MAI 24.01 (1978). Instruction No. 2 was properly submitted.

Defendant's final allegation of error is that the trial court erred in denying its motion for new trial because the verdict was so excessive that it demonstrated the passion and prejudice of the jury. Defendant contends, alternatively, that the trial court should have remitted $75,000 from the verdict by the rule of uniformity.

■ The trial court may find passion and prejudice by the jury from the excessiveness of the verdict alone. *Stubbs v. Kansas City Terminal Railroad Co.*, 427 S.W.2d 257, 261[4] (Mo.App.1968). When the trial court has made no such finding the appellate court will defer to the trial court and will not make a finding of passion or prejudice from the amount of the verdict alone. *Means v. Sears, Roebuck & Co.*, 550 S.W.2d 780, 788[10] (Mo.banc 1977). As this court said in the case of *Koehler v. Burlington Northern, Inc.*, 573 S.W.2d 938, 945[17] (Mo.App.1978):

---

**2.** Wigmore on Evidence (Chadbourn Revision) Vol. VI, § 1788, 1789. The hearsay rule forbids merely the use of an extrajudicial utterance as an assertion *to* evidence the fact asserted. What the hearsay rule forbids is the use of testimonial evidence—i. e., assertions—uttered not under cross-examination. If, then, an utterance can be used as circumstantial evidence, i. e., without inferring from it as an assertion to the fact asserted, the hearsay rule does not oppose any barrier, because it is not applicable.

**3.** In *Rinker*, the defendant auto manufacturer objected to a report listing previous instances of the same type of defect as that claimed by the plaintiff to have been the cause of her injury. The trial court admitted the report solely for the purpose of showing knowledge on the part of the defendant of the allegedly defective part. See also, *State ex rel. 807, Inc. v. Saitz*, 425 S.W.2d 96, 99[2] (Mo.1968).

"The mere excessiveness of the verdict, standing alone, does not establish that it was the result of bias or prejudice. Defendant must show that the verdict was glaringly unwarranted by the evidence. In addition defendant has the burden of showing some trial error or misconduct by the prevailing party responsible for prejudicing the jury against defendant." [citations omitted]

Here, the defendant argues that two errors raised in this appeal caused passion and prejudice in the jury. The errors the defendant points to concern the occurrence at trial of the judge falling asleep and the admission into evidence of the notations written on daily time reports. We have already ruled against the defendant on these alleged errors. Defendant has suggested no other trial error which could have produced the necessary passion and prejudice in the jury. Therefore, we must rule against the defendant on this point.

■ Defendant alternatively contends that if the court rejects defendant's claim that the verdict was a result of the passion and prejudice of the jury, the court should find the verdict excessive under the rule of uniformity and remit it by $75,000.

The verdict must be excessive as a matter of law and the excessiveness must be so gross that it shocks the conscience of the court convincing them that both the jury and the trial court have abused their discretion. See, *Koehler v. Burlington Northern, Inc.*, Id. at 946[25]. That is not the case here. At trial the plaintiff presented sufficient evidence to support the jury verdict of $90,-000. There was evidence presented at trial that plaintiff would have earned a sum of $54,076.73 in wages from May 24, 1971 until the time of his retirement. There was also evidence presented that plaintiff lost $3,705.23 that would have been paid to the Retirement Board and that plaintiff could have made $38,250 in profits from operating a roller skating rink from the time he would have retired to the date of trial.

There was also evidence of pain and suffering concerning the plaintiff's condition which the jury may have taken into consideration in assessing the plaintiff's damages.

There was sufficient evidence presented at trial for the jury and trial court to have reasonably assessed the plaintiff's damages at $90,000. Defendant's request for remittitur is denied.

■ The plaintiff argues that this appeal be dismissed because the defendant has failed to set out "a fair and concise statement of the facts relevant to the questions presented for determination without argument" as is required by Rule 84.04(c). The plaintiff did not file a motion to dismiss but instead makes this point in his brief. If the defendant's brief was deficient in setting out the facts, the plaintiff in his brief corrected any deficiencies which may have existed. *Independent Stave Co. v. Higdon*, 572 S.W.2d 424, 429–430[6] (Mo.banc 1978). Plaintiff's point is without merit.

■ The plaintiff claims he is entitled to additional damages because this appeal is frivolous and without merit. Our court has said that "[t]he test seems to be that the question raised on appeal must be at least fairly debatable to clear it of the charge of being frivolous or vexatious. *DeMayo v. Lyons*, 243 S.W.2d 967, 970[4, 5] (Mo.1951)." *Brooks v. General Motors Assembly Division*, 527 S.W.2d 50, 54[11] (Mo.App.1975). The defendant has raised points which are "fairly debatable" and "justiciable." Plaintiff's point is without merit.

The plaintiff also asserts that the amended Missouri statute concerning interest on judgments rendered[4] be applied retrospectively so that the plaintiff be awarded interest at a rate of 9% per annum from the day of judgment until the time of satisfaction. In the alternative, the plaintiff asks that interest begin to accrue at a rate of 9% from the time the amended interest law became effective.

4. § 408.040 RSMo Supp.1979, was approved on May 31, 1979 and became effective September 28, 1979. Judgment for the plaintiff in the amount of $90,000 was rendered on September 21, 1977.

Our Constitution [5] provides that a statute shall not be applied retrospectively. A statute shall not be applied retrospectively except where the legislature manifests a clear intent that it do so and where the statute is procedural only and does not effect any substantive right of the parties. *State ex rel. St. Louis-San Francisco Ry. Co. v. Buder*, 515 S.W.2d 409, 410[1] (Mo. banc 1974). The present statute does not meet the exception and shall not be applied retrospectively.

However, plaintiff prays that in the alternative, the increased interest rate of 9% be applied from the date the amendment became effective. Neither party has provided us with the benefit of their views on this alternative question. The precise question of the effect of a change in interest rates on judgments awaiting appellate review appears to be one of first impression in our state.

We have found a division of authority in other states as to the effect of a change in the statutory rate upon outstanding judgments. Some courts treat judgments as contractual, and the interest rate provided has been held not to be affected by subsequent statutes changing the rate of interest. See 45 Am.Jur.2d, Interest and Usury § 11 (1969), *Sunray DX Oil Co. v. Great Lakes Carbon Corp.*, 476 P.2d 329 (Okl. 1970).

Other states have held that interest on judgments is not a contractual matter, but is simply an obligation imposed by law and the right to receive interest depends entirely on what the legislature chooses to prescribe. See 45 Am.Jur.2d, Interest and Usury § 11 (1969), *Noe v. City of Chicago*, 56 Ill.2d 346, 307 N.E.2d 376 (1974).

We hold the view that judgments bear interest only as a result of the statute. See *State of Mo. ex rel. Walsh v. Vogel*, 14 Mo.App. 187 (1883), *Laughlin v. Boatmen's National Bank of St. Louis*, 189 S.W.2d 974, 980 (Mo.1945).

According to our statute, interest is allowed on any judgment from the day of rendering the same. To apply interest at the increased rate from September 28, 1979 until satisfied does not affect any accrued and vested rights of the parties under the previous statute. Plaintiff is entitled to the increased rate as of the effective date of the amendment.

Judgment is affirmed.

STEWART, P. J., and SNYDER, J., concur.