SELK v DETROIT PLASTIC PRODUCTS

FURMAN v DEPARTMENT OF CORRECTIONS

KELLY v MUSKEGON COUNTY ROAD COMMISSION

Docket Nos. 62449, 62542, 62553, 62653. Submitted August 2, 1982, at Lansing.—Decided October 5, 1982. Leave to appeal granted, 417 Mich __.

Marguerite A. Selk, an employee of Detroit Plastic Products, petitioned for and was awarded workers' compensation benefits for injury to her hips. The WCAB affirmed the decision of the hearing referee on appeal. The defendant appeals.

Ralph Furman, an employee of the Michigan Department of Corrections, petitioned for and was awarded workers' compensation benefits for total and permanent disability on the basis of Furman's incurable insanity. Subsequently, the 800-week conclusive presumption period as provided in the Worker's Disability Compensation Act ended; whereupon, Furman petitioned for a factual determination of permanent and total disability. The hearing referee held that there had been no material change in Furman's condition since the original determination of incurable insanity was made. On appeal, the Workers' Compensation Appeal Board affirmed the decision of the hearing referee. The Department of Corrections, Michigan State Accident Fund and Second Injury Fund appeal.

Edward T. Kelly, an employee of the Muskegon County Road Commission, suffered a work-related back injury. Thereafter,

REFERENCES FOR POINTS IN HEADNOTES

[1] 82 Am Jur 2d, Workmen's Compensation § 579.
[2] 73 Am Jur 2d, Statutes § 347.
[3] 73 Am Jur 2d, Statutes § 354.
[4] 81 Am Jur 2d, Workmen's Compensation §§ 11, 15, 16, 18.
[5] 81 Am Jur 2d, Workmen's Compensation § 16.
  82 Am Jur 2d, Workmen's Compensation § 511.
[6] 82 Am Jur 2d, Workmen's Compensation §§ 584, 609.
[7] 82 Am Jur 2d, Workmen's Compensation § 584.
[8] 82 Am Jur 2d, Workmen's Compensation § 552.
[9] 82 Am Jur 2d, Workmen's Compensation §§ 240, 293.
[10] 82 Am Jur 2d, Workmen's Compensation § 616.

Kelly returned to work for five months. Subsequently Kelly quit his job and petitioned for workers' compensation benefits. The hearing referee refused to award benefits to Kelly because he found that Kelly did not have a compensable injury on the last day that he worked. On appeal, the WCAB reversed the decision of the hearing referee, finding that Kelly aggravated his pre-existing back injury after he returned to work. The WCAB entered a retroactive award of compensation benefits. The Muskegon County Road Commission and Kansas City Fire and Marine appeal.

The Court of Appeals consolidated the cases. The Court considered the following issues whether: (1) a recent amendment to the Worker's Disability Compensation Act, which became effective on January 1, 1982, requires that interest on workers' compensation awards made after January 1, 1982, be computed at a rate of 12% per annum with respect to payments which became due prior to the effective date of the amendment; (2) with respect to the disability of Furman, after the expiration of the 800-week period, the issue of Furman's disability may be subject to complete relitigation or only whether there had been a change in Furman's condition in the 800-week period; (3) Selk satisfied her burden of proving that the bursitis condition in her hips was work-related; and (4) the WCAB's finding of disability with respect to Kelly was supported by medical testimony and whether, due to the complex nature of Kelly's complaint, Kelly's lay testimony was sufficient to support the WCAB's finding. *Held:*

1. In all three cases the WCAB entered its awards after January 1, 1982. The WCAB was correct in holding that the amendment regarding 12% interest requires the payment of 12% interest on the entire awards despite the fact that the bulk of the awards involved payments which became due prior to the effective date of the amendment. Although generally, statutory enactments are to be applied only prospectively unless the Legislature indicates its intent that they be given retrospective effect, here, the language used by the Legislature is clear that the amendment applies to awards made after the effective date of the amendment to payments which became due prior thereto. In addition, because the legislation is remedial in nature, if the Legislature had intended that the amendment be applied prospectively only, it would have so stated in express language. The retrospective application of the amendment does not constitute an unconstitutional impairment of contractual obligations and does not violate due process. Furthermore, the contention that because the WCAB is not pos-

sessed with judicial power any attempt by the WCAB to interpret the amendment is invalid is without merit.

2. The WCAB's decision regarding Furman should be affirmed because the principles of res judicata bar the defendants from relitigating the issue of whether Furman was incurably insane at the time of the original award. Because no change in Furman's condition was shown, the intervening change in the legal definition of incurable insanity should not be a basis for defeating Furman's claim.

3. The WCAB's findings of fact in regard to Selk's claim were supported by evidence and should be affirmed. Findings of fact in workers' compensation proceedings are conclusive absent fraud and the findings of the WCAB are conclusive if there is any evidence to support them.

4. The WCAB's findings with regard to Kelly's claim were supported by evidence and provided a sufficiently detailed basis for the Court of Appeals to adequately perform its appellate function. The WCAB's findings should be affirmed.

Affirmed.

1. WORKERS' COMPENSATION — INTEREST.

The amendment to the Worker's Disability Compensation Act providing that interest on the compensation shall be paid at the rate of 12% per annum from the date each payment was due, until paid, which became effective January 1, 1982, requires that for all awards made after January 1, 1982, the 12% interest rate should be computed by referring to the date the payment became due without regard to the fact that payment may have become due prior to January 1, 1982; because the language of the statute is clear and unambiguous, further interpretation is unnecessary (MCL 418.801[1], [5]; MSA 17.237[801][1], [5]).

2. STATUTES — PROSPECTIVE APPLICATION.

Generally, statutory enactments should be applied only prospectively unless the Legislature indicates its intent that they be given retrospective effect.

3. STATUTES — REMEDIES — RETROSPECTIVE APPLICATION.

Statutes related to remedies or modes of procedure, which do not create new or take away vested rights but only operate in furtherance of a remedy or confirmation of rights already existing should, in the absence of language clearly showing a contrary intention, be held to operate retrospectively and apply to all actions accrued, pending or future, there being no vested

right to keep a statutory procedural law unchanged and free . from amendment.

4. WORKERS' COMPENSATION — CONSTITUTIONAL LAW.

The police power of the state may be exercised to affect the due process of law clause as well as the impairment of contract clause of the United States Constitution; the subject matter of workers' compensation reposes within the control of the Legislature and a law enacted pursuant to rightful authority is proper, and private contracts are entered into subject to that governmental authority.

5. WORKERS' COMPENSATION — DUE PROCESS.

The Due Process Clauses of the state and federal constitutions do not freeze the burden of workers' compensation liability as of the date of the occurrance of an industrial accident beyond the power of legislative change; in carrying out its social purpose, the Legislature has the power to increase the burden on the employer for disability or expenses occurring or continuing after the date of the enactment of an amendatory statute even though the accident which gave rise to the disability or expenses had occurred prior to that time.

6. WORKERS' COMPENSATION — TOTAL DISABILITY — CONCLUSIVE PRESUMPTION PERIOD.

A worker found to be totally and permanently disabled is entitled to an 800-week conclusive presumption of disability under the Worker's Disability Compensation Act; upon the expiration of the 800-week period, the worker loses the benefit of the conclusive presumption, and an employer and its insurer are free to petition for a determination of rights on the ground that the worker's condition has changed and that he is no longer totally and permanently disabled; the burden of proving the change of condition is on the employer and the employer is not entitled to relitigate the issue of whether the worker was totally and permanently disabled at the time the award was made because he is precluded from doing so by the principles of res judicata (MCL 418.351; MSA 17.237[351]).

7. WORKERS' COMPENSATION — RES JUDICATA.

The principles of res judicata preclude the subsequent relitigation of an issue in the context of a workers' compensation action even if there is a change in the law in the intervening period unless there is also an accompanying change in the worker's physical or mental condition.

8. WORKERS' COMPENSATION — FINDINGS OF FACT.

Findings of fact in workers' compensation proceedings are conclusive absent fraud; under that standard of review, the findings of the Workers' Compensation Appeal Board are conclusive if there is any evidence to support them.

9. WORKERS' COMPENSATION — WORK-RELATED INJURY.

A claimant for workers' compensation benefits should show a reasonable relation of cause and effect between his work and the injury to establish that an injury is work-related; if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the disability, the claimant should be entitled to compensation.

10. WORKERS' COMPENSATION — WORKERS' COMPENSATION APPEAL BOARD.

The Workers' Compensation Appeal Board should write a sufficiently comprehensive, if not formal, decision which will permit the parties to soundly judge the propriety of an appeal and which will facilitate appellate review in the event of an appeal.

*Kelman, Loria, Downing, Schneider & Simpson* (by *James P. Harvey)*, for Marguerite A. Selk.

*White, Spaniola, Stariha, Potuznik, Reider, Brown, Wierengo, Fielstra & Flynn, P.C.* (by *J. Christopher Wilson)*, for Edward T. Kelly.

*Cox, Hooth & Curley* (by *Wilfred F. Curley,* for Detroit Plastic Products.

*Nelson, Payne, Parsons & Bouwkamp* (by *Michael A. Reynolds)*, for Department of Corrections and Michigan State Accident Fund.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Caleb B. Martin, Jr.,* Assistant Attorney General, for Second Injury Fund.

*Baxter & Hammond* (by *James R. Piggush)*, for

Muskegon County Road Commission and Kansas City Fire & Marine.

Before: DANHOF, C.J., and J. H. GILLIS and M. R. KNOBLOCK,* JJ.

DANHOF, C.J. In these consolidated appeals, we are called upon to determine, *inter alia,* whether a recent amendment to MCL 418.801; MSA 17.237(801), requires a finding that interest on workers' compensation awards made after January 1, 1982, be computed at a rate of 12% per annum with respect to payments which became due prior to the effective date of the amendment.

## I. FACTS

A. *Furman*

Plaintiff, Ralph Furman, suffered a work-related injury in 1961. He was awarded benefits for partial incapacity at that time. In 1973, he petitioned for total and permanent disability benefits alleging industrial loss of use of both legs and incurable insanity. He presented the testimony of a psychiatrist which supported his claim. Defendants failed to present any contradictory evidence, whereupon in January, 1973, the hearing referee made a finding of total and permanent disability on the basis of plaintiff's incurable insanity. That decision was not appealed.

In June, 1976, plaintiff's 800-week conclusive presumption period ended. MCL 418.351; MSA 17.237(351). At that time, defendants discontinued paying benefits, whereupon plaintiff petitioned for a factual determination of permanent and total

---

* Circuit judge, sitting on the Court of Appeals by assignment.

disability. At the hearing, defendants presented expert testimony concerning plaintiff's mental condition. Plaintiff presented contradictory evidence. The hearing referee found that there had been no material change in plaintiff's condition since the original determination of incurable insanity was made and that plaintiff's benefits should be resumed. Defendants appealed that decision to the Workers' Compensation Appeal Board.

Defendants did not deny that plaintiff's condition remained unchanged after the 1973 decision. Rather, they argued that the evidence conclusively established that plaintiff had never been incurably insane, under either the definition of insanity which existed at the time the 1973 award was entered or the definition which was established thereafter.

In a split decision, the board affirmed the hearing referee's decision by an order entered on January 14, 1982.

B. *Selk*

Plaintiff Selk filed a petition for benefits on July 27, 1978, claiming that she injured her hips in a work-related incident in January, 1978, and that thereafter her condition was aggravated by a further work-related incident. Contradictory evidence was presented at the hearing with plaintiff and her expert testifying that her injury was work-related. Defendant's expert testified that plaintiff's condition was related to her normal "non-work related" activities of life. The hearing referee found in favor of plaintiff and entered an open award and ordered the payment of back benefits. By order entered January 8, 1982, the board affirmed the decision of the hearing referee.

C. *Kelly*

Plaintiff Kelly suffered a work-related back injury in January, 1974. Thereafter, defendants voluntarily paid benefits until plaintiff returned to work in November, 1975. Plaintiff quit his job in April, 1976, and filed a petition for benefits on November 11, 1976. Following a hearing held on April 26, 1978, the hearing referee found that plaintiff suffered a work-related injury in 1974. However, he refused to award benefits because he found that plaintiff did not have a compensable injury on April 21, 1976, the last day that he worked.

By an order entered on January 15, 1982, the board reversed the hearing referee's decision. It found that plaintiff aggravated his pre-existing back injury while performing work for defendants after returning to work in 1975. It further found that plaintiff suffered disabling neck pain and headaches which resulted from the back injury. Therefore, it entered a retroactive award of compensation benefits from April 21, 1976, and thereafter until further order of the board.

## II. 12% INTEREST AWARD

In all three of these consolidated cases, the board entered its awards after January 1, 1982, the effective date of MCL 418.801(5); MSA 17.237(801)(5), which provides:

"(5) When weekly compensation is paid pursuant to an award of a hearing referee, the board, or a court, interest on the compensation shall be paid at the rate of 12% per annum from the date each payment was due, until paid."

The board held that the amendment requires the payment of 12% interest on the entire awards, despite the fact that the bulk of the awards involved payments which became due prior to the effective date of the amendment.

We are of the opinion that the board's application of the amendment is correct. As noted above, the amendment provides, in part, that interest on a compensation award "shall be paid at the rate of 12% per annum from the date each payment was due". MCL 418.801(1); MSA 17.237(801)(1) provides that compensation becomes due and payable 14 days after the employer is notified of the disability. These two provisions read together compel a finding that the amendment clearly and unambiguously requires that for all awards made after January 1, 1982, the 12% interest rate be computed by referring to the date payment became due without regard to the fact that payment may have become due prior to January 1, 1982. Since the language of the statute is clear and unambiguous, further interpretation is unnecessary. *Owendale-Gagetown School Dist v State Bd of Ed,* 413 Mich 1, 8; 317 NW2d 529 (1982).

Defendants claim that to apply the statute in this manner violates the rule that statutes are to be applied prospectively only. We agree with defendants that, as a general rule, statutory enactments are to be applied only prospectively unless the Legislature indicates its intent that they be given retrospective effect. *Hughes v Judges' Retirement Bd,* 407 Mich 75, 85; 282 NW2d 160 (1979). However, as discussed above, the language used by the Legislature in this legislation convinces us that the Legislature intended that the 12% interest rate be applied to awards made after the effective date of the amendment to payments which became due prior thereto.

Even if the language used did not constitute such a clear expression of the Legislature's intent, we would still be compelled to conclude that the board's application of the amendment was correct. In *Ballog v Knight Newspapers, Inc,* 381 Mich 527; 164 NW2d 19 (1969), plaintiff filed his complaint in a personal injury action before July 21, 1965, the effective date of the amendment to MCL 600.6013; MSA 27A.6013. Prior to the amendment, the statute provided that interest on a money judgment was to be calculated from the date of judgment. Thereafter, it provided that interest should be calculated from the date the complaint was filed. The trial court ruled that plaintiff was not entitled to interest from the date his complaint was filed because to permit such an award would involve retrospective application of the amendment. The Supreme Court reversed the trial court's decision. It ruled that the amendment was remedial in nature and quoted from *Hansen-Snyder Co v General Motors Corp,* 371 Mich 480; 124 NW2d 286 (1963), in holding the following:

" '[S]tatutes related to remedies or modes of procedure, which do not create new or take away vested rights, but only operate in furtherance of a remedy or confirmation of rights already existing will, *in the absence of language clearly showing a contrary intention,* be held to operate retrospectively and apply to all actions accrued, pending or future, there being no vested right to keep a statutory procedural law unchanged and free from amendment.' " 381 Mich 533-534.

The Court ruled that, because the Legislature failed to express an intent that the statute apply only prospectively, the trial court erred in refusing to grant plaintiff interest on his judgment computed from the date that his complaint was filed.

In our opinion, the amendment relating to the payment of 12% interest on workers' compensation awards is also remedial in nature. See, *e.g.*, *McAvoy v H B Sherman Co,* 401 Mich 419, 457; 258 NW2d 414 (1977); *Lahti v Fosterling,* 257 Mich 578; 99 NW2d 490 (1959). When the Florida Legislature amended its Workers' Compensation Act to provide for a change from 6% to 12% in the rate of interest payable, it expressly provided that the 12% rate was limited to "claims arising out of injuries which occur on or after" the effective date of the amendment. Section 440.20, Fla Statutes (1978 Supp); *Myers v Carr Construction Co,* 387 So 2d 417 (Fla App, 1980); *E & A Concrete v Perry,* 379 So 2d 1015 (Fla App, 1980). If the Michigan Legislature intended that this amendment be applied prospectively only, it would have so stated in express language as it did when it amended MCL 600.6013; MSA 27A.6013, to provide for a change from 6% to 12% in the rate of interest which is to be paid on judgments. Since it did not do so, the statute must be read as operating retrospectively.

Defendants contend that the Supreme Court's decision in *Hughes v Judges' Retirement Bd, supra,* supports their claim. Defendants' reliance on *Hughes, supra,* is misplaced. *Hughes* did not hold that a remedial statute may not be applied retrospectively. Rather, it held that judges who retired prior to the 1974 amendment to the Judges' Retirement Act, MCL 38.801 *et seq.;* MSA 27.125(1) *et seq.,* were not precluded from receiving an increase in their pension benefits in accordance with the amendment merely because the Legislature did not indicate that the amendment was to be applied retrospectively. The amendment provided that benefits were to be computed by reference to the number of years of service of the

retiree. Plaintiffs had completed the requisite number of years of service, but had completed that service prior to the time that the amendment became effective. The Court held that because plaintiffs requested increased benefits not from the date of their retirement, but rather from the effective date of the amendment, the rule against retrospective application of a statute was not violated. The fact that benefits were to be computed by reference to services performed prior to the effective date of the amendment did not alter that finding. The Court stated that the mere fact that some of the requisites for the application of a statute are drawn from a time antedating its passage does not constitute a retrospective statute. *Hughes, supra,* p 86.

The legislation involved in *Hughes, supra,* did not relate to remedies or modes of procedure. However, even assuming that our analysis of this legislation is governed by the Supreme Court's decision in *Hughes,* that decision does not support defendants' position. On the contrary, it supports a conclusion that the manner in which the board applied this amendment does not even involve retrospective application of the amendment. The 12% interest provision was not held to apply to awards entered prior to the effective date of the amendment. It was held to apply only to those awards which were made on or after January 1, 1982. The fact that the board ruled that for awards entered after that date the 12% interest rate is to be computed on the entire award, despite the fact that a portion of the award became due prior to January 1, 1982, does not require a finding of retrospective application. Rather, the date on which payment became due is merely an antecedent event by reference to which the amount of

interest payable is computed. *Hughes, supra,* held that a statute cannot be regarded as operating retrospectively merely because it relates to an antecedent event.

Defendants next claim that to apply the 12% interest rate to payments which became due prior to the effective date of the statute constitutes an unconstitutional impairment of contractual obligations. US Const, art 1, § 10; Const 1963, art 1, § 10. Our disposition of this issue is controlled by *Mc-Avoy v H B Sherman Co, supra,* wherein the Supreme Court quoted from *Lahti v Fosterling, supra,* in holding:

" 'In *Matter of Schmidt v Wolf Contracting Co,* 269 App Div 201; 55 NYS2d 162 [1945], the court considered the aims and purposes of the workmen's compensation law in attempting to arrive at the intent of the legislature to apply a retroactive amendment to workmen injured prior to the effective date of the act, held the legislature had the right to so amend, and applied retrospectively the amended provisions. It further stated it was unreasonable to assume that the legislature intended that a workman who suffers injury on one date is any less affected than one injured on a subsequent date of the same year. With reference to the defense that the contract between the employer and its insurance carrier is impaired by such an amendment and that the statute violates the due process clauses of the State constitution and the Constitution of the United States, the court said (pp 207, 208):

" ' "That argument is without merit. * * *

" ' "Liability under the workmen's compensation law is contractual, the amendment is not thereby violative of the provisions of the Constitution of the United States. The police power of the State may be exercised to affect the due process of law clause as well as the impairment of contract clause of the Federal Constitution.

" ' "The subject matter of workmen's compensation reposes within the control of the legislature.

" ' "A law enacted pursuant to rightful authority is proper, and private contracts are entered into subject to that governmental authority." ' *Lahti, supra,* 592." 401 Mich 419. See also *Cosby v Pool,* 36 Mich App 571; 194 NW2d 142 (1971).

Defendants next complain that if the Legislature intended to apply the 12% rate to payments which became due prior to the effective date of the amendment, such a provision violates due process. This contention is without merit. It is clear that the Legislature's objective in insuring that claimants are fully compensated in the event that the employer fails to pay benefits when due is a legitimate one. *McAvoy v H B Sherman Co, supra.* Furthermore, we are unable to say that the rate chosen by the Legislature is not reasonably related to that objective. The fact that the application of the rate to payments which became due prior to the effective date of the amendment increases the burden upon defendants does not affect our decision. In *Lahti v Fosterling, supra,* the Supreme Court quoted from *Matter of Hogan v Lawlor & Cavanaugh Co,* 286 App Div 600; 146 NYS2d 119 (1955), in holding:

" 'The due process clause of the State and Federal Constitutions does not freeze the burden of compensation liability as of the date of the occurrence of an industrial accident, beyond the power of legislative change. In carrying out its social purpose, the legislature has the power to increase the burden on the employer for disability or expenses occurring or continuing after the date of the enactment of the amendatory statute, even though the accident which gave rise to the disability or expenses had occurred prior to that time.' " 357 Mich 591-592.

Defendants finally complain that the board is not possessed with judicial power and that, therefore, any attempt by it to interpret the amendment is invalid. In support of their contention, defendants rely on *Solakis v Roberts,* 395 Mich 13; 233 NW2d 1 (1975). In *Solakis,* the Supreme Court stated that, because the right to an award of compensation is contractual, the board was not empowered to set a rate of interest which is different from that which was provided in MCL 438.51; MSA 19.11. However, the Court was careful to point out that the Legislature is free to provide for such a change. That is precisely what has occurred here. Since we have already ruled that the board has correctly applied the amendment, we find defendants' contention to be without merit.

We affirm the decision of the Workers' Compensation Appeal Board on this issue.

### III. COMPENSATION

#### A. *Furman*

The dispute which exists with respect to the award of compensation to Furman relates to the meaning of MCL 418.351; MSA 17.237(351). It provides that after a determination of total disability is made, a conclusive presumption of disability remains in effect for a period of 800 weeks commencing from the date of injury. It further provides the following:

"The conclusive presumption of total and permanent disability shall not extend beyond 800 weeks from the date of injury and thereafter the question of permanent and total disability shall be determined in accordance with the fact, as the fact may be at that time."

Defendants contend that after the 800-week pe-

riod expires, the issue of plaintiff's disability is subject to complete relitigation. The board ruled that the only issue which may be resolved at the second hearing is a determination concerning whether there has been a change in plaintiff's condition between the time of the first decision and the time that the 800-week period expires.

As noted earlier, defendants do not contend that plaintiff's condition has changed since 1973. Rather, they contend that plaintiff has never been incurably insane. The board indicated that it tended to agree with defendants' contention. However, it ruled that, because defendants failed to appeal that decision, it was bound by the 1973 determination.

After the parties' briefs were filed in this appeal, the Supreme Court rendered its decision in *Ferns v Russ Graham Shell Service,* 413 Mich 550; 321 NW2d 380 (1982). In *Ferns, supra,* plaintiff was injured in the course of his employment and was awarded total and permanent disability benefits. After the expiration of the 800-week period, defendants terminated benefits. Plaintiff's request for additional benefits was granted by the hearing referee. The board affirmed that determination, holding that defendant's failure to show that defendant's condition had changed required such a finding. In affirming the board's determination, the Supreme Court ruled:

"We believe that the WCAB has accurately assessed the legislative intention in this regard. MCL 418.351(1); MSA 17.237(351)(1) specifically provides that: 'Compensation shall be paid for the duration of the disability'. An employee who is found to be totally and permanently disabled is entitled to an 800-week 'conclusive presumption' that he or she remains so disabled. However, on expiration of that 800-week period, the em-

ployee simply loses the benefit of the conclusive presumption.

"Once the legislatively-bestowed benefit of the conclusive presumption has terminated, the employer and its insurer (and indeed insofar as differential benefits are concerned the Second Injury Fund) are free, as noted by the WCAB, to 'petition for a determination of rights alleging that due to a change of condition plaintiff no longer remains permanently and totally disabled'. Clearly the employer and its insurer and the Second Injury Fund must bear the burden of establishing that the employee, who has previously been determined to be totally and permanently disabled is no longer so disabled." *Ferns, supra,* p 555.

In view of the foregoing, we are of the opinion that the burden was on defendants to establish that plaintiff's condition changed between the date of the original award and the date that the board entered its decision. Defendants were not entitled to relitigate the issue of whether plaintiff was incurably insane at the time the 1973 award was entered. See, also, *Gose v Monroe Auto Equipment Co,* 409 Mich 147; 294 NW2d 165 (1980).

Defendants contend that, even if they were required to show a change in circumstances, such a change was shown because the legal definition of incurable insanity, for workers' compensation claims purposes, changed between the time the 1973 award was entered and the date that the board entered its decision in this case. At the time that the 1973 award was entered, decisions concerning claims of incurable insanity were governed by the definition stated in *Sprute v Herlihy Mid-Continent Co,* 32 Mich App 574; 189 NW2d 89 (1971). In 1978, the Supreme Court overruled *Sprute* and announced a new more restrictive standard. *Redfern v Sparks-Withington Co,* 403 Mich 63; 268 NW2d 28 (1978). Although we tend to

agree that plaintiff is not incurably insane applying the *Redfern* test, we cannot agree that the intervening change in the law permits the issue of plaintiff's condition to be relitigated.

In *Hlady v Wolverine Bolt Co,* 393 Mich 368; 224 NW2d 856 (1975), the Supreme Court ruled that the principles of res judicata preclude the subsequent relitigation of an issue in the context of a workers' compensation action even if there is a change in the law in the intervening period unless there is also an accompanying change in plaintiff's physical or mental condition. That decision was reaffirmed by the Court's decision in *Gose v Monroe Auto Equipment Co, supra,* p 161. Also, as noted earlier, the Court in *Ferns, supra,* held that defendant's failure to establish a change in plaintiff's "condition" following the expiration of the 800-week period precludes the board from ordering that plaintiff's benefits be terminated.

Therefore, we find it unnecessary to determine whether the *Redfern* test or the *Sprute* test would have applied if defendants had shown that plaintiff's condition changed between 1973 and the date the board entered its decision. Since no change of condition was shown, the intervening change in the law could not be advanced as a ground to defeat plaintiff's claim. The principles of res judicata bar defendants from relitigating this issue. The board's decision is affirmed.

B. *Selk*

Selk claimed that she had a bursitis condition in her hips which was aggravated by her employment and which was of a disabling nature. Defendant claims that plaintiff failed to satisfy her burden of proving that the condition was work-related. The hearing referee found in favor of plaintiff. The board affirmed that finding.

It is well-established that findings of fact in workers' compensation proceedings are conclusive in the absence of fraud. Const 1963, art 6, § 28. Under this standard of review, the findings of the board are conclusive if there is any evidence to support them. *Kostamo v Marquette Iron Mining Co,* 405 Mich 105, 135-136; 274 NW2d 411 (1979).

In order to establish that an injury is work-related, the claimant must show a reasonable relation of cause and effect between her work and the injury. If the employment aggravated, accelerated, or combined with the disease or infirmity to produce the disability, the claimant is entitled to compensation. *Kostamo, supra; Gibbs v General Motors Corp,* 114 Mich App 1; 318 NW2d 565 (1982).

Plaintiff's expert, Dr. Raymond Lipton, testified that plaintiff was suffering from chronic bursitis of the hips with a calcific deposit on her right side. He stated that it was much more likely that her employment, rather than some other activity, caused the bursitis. Plaintiff testified that the nature of her work caused her to continuously bump her hips into objects in the workplace which resulted in her suffering severe pain. She claimed that, on one occasion, she was bumped quite severely and that thereafter she began experiencing constant pain on her right hip. Dr. John Corbett, defendant's expert, testified that he believed that plaintiff's condition was not caused by her employment. However, he admitted that her work activity could have aggravated her bursitis.

In our opinion, the board's findings of fact were supported by evidence and are affirmed.

## C. *Kelly*

Defendants claim that the board's finding of disability with respect to Kelly is unsupported by

medical testimony and that due to the complex nature of plaintiff's complaint plaintiff's lay testimony was not sufficient to support the board's finding.

We find it unnecessary to determine whether the board could have relied exclusively on plaintiff's testimony in resolving the issue of causation, because it is clear that the board's finding was supported by the testimony of plaintiff's expert witness, Dr. Donald Eck, and that the board relied on that testimony in making its finding.

Dr. Eck testified that he first examined plaintiff in April, 1974, and that he diagnosed plaintiff as suffering from a lumbosacral instability. Defendants do not deny that that condition was caused by a work-related accident which occurred in January, 1974. Dr. Eck noted that before plaintiff quit his job in April, 1976, he complained frequently about neck and headache pains. Dr. Eck stated that plaintiff's disability was caused by both his back pain and his headaches. Furthermore, he testified that plaintiff's neck pains are a result of an ascending spinal spasm.

In making its determination, the board indicated that it could rely exclusively on plaintiff's testimony in resolving the issue of whether plaintiff's injury was work-related. However, the board further indicated that plaintiff's testimony was consistent with the testimony of Dr. Eck and that the best medical evidence was that which was presented by Dr. Eck.

In view of the foregoing, we are satisfied that the board based its decision on both the testimony of plaintiff and the testimony of Dr. Eck. Furthermore, we are satisfied that the testimony provided evidence to support the board's finding. *Kostamo, supra.*

We also find without merit defendants' claim that the board's findings were inadequate. The board's findings provided a sufficiently detailed basis for this Court to adequately perform its appellate function. *Nunn v George A Cantrick Co, Inc,* 113 Mich App 486, 494; 317 NW2d 331 (1982).

The board's findings are affirmed.

## IV. SUMMARY

We affirm the ruling of the Workers' Compensation Appeal Board that the 12% interest provision contained in MCL 418.801(5); MSA 17.237(801)(5) applies to all awards made after January 1, 1982. We also affirm the board's decisions regarding compensation in all three cases. No costs, a question of statutory construction being central to resolution of this case.

Affirmed.