SELK v DETROIT PLASTIC PRODUCTS

KELLY v MUSKEGON COUNTY ROAD COMMISSION

FURMAN v DEPARTMENT OF CORRECTIONS

Docket Nos. 70397, 70412, 70417, 70421. Argued August 16, 1983 (Calendar Nos. 10-12).—Decided March 21, 1984. Rehearings granted *post,* 1205.

Marguerite A. Selk was awarded workers' compensation benefits for work-related injuries of her hips while employed by Detroit Plastic Products. Edward T. Kelly was awarded workers' compensation benefits for the aggravation of a pre-existing back injury while employed by the Muskegon County Road Commission. Ralph C. Furman was awarded total and permanent disability benefits for the loss of the industrial use of both legs and for incurable insanity as a result of a work-related injury while employed by the Department of Corrections. While an appeal to the Workers' Compensation Appeal Board was pending in each case, the Legislature increased the interest on unpaid compensation from 5% to 12% per annum from the date each payment was due until it is paid; the statutory amendment took effect January 1, 1982. In each case, the board entered an award after January 1, 1982, and ordered the employers and carriers to pay 12% interest on the entire award. The Court of Appeals, Danhof, C.J., and J. H. Gillis and Knoblock, JJ., affirmed (Docket Nos. 62449, 62542, 62553, 62653). The employers and carriers appeal, arguing that because the bulk of the awards became due before January 1, 1982, interest should be calculated at 5% per annum for payments due up to December 31, 1981, regardless of when the awards were made.

In an opinion by Justice Boyle, joined by Chief Justice Williams and Justices Ryan, Brickley, and Cavanagh, the Supreme Court *held:*

Interest on a workers' compensation award paid by an employer pursuant to an award of a hearing referee, the WCAB,

REFERENCES FOR POINTS IN HEADNOTES

[1-4] 82 Am Jur 2d, Workmen's Compensation § 579.

[2-4] 81 Am Jur 2d, Workmen's Compensation § 34.

[3] 81 Am Jur 2d, Workmen's Compensation §§ 16, 18.

or a court which is entered after January 1, 1982, shall be paid at the rate of 12% per annum from the date each payment was due.

1. The amendment of the provision for interest on workers' compensation awards plainly, certainly, and unambiguously requires that 12% interest per annum is to be computed on an award of weekly workers' compensation benefits from the date on which each payment was due until it is paid. The language "was due" is clear and does not require construction. Even if it did, the result would be the same. Statutes are presumed to operate prospectively unless a contrary intent is clearly expressed. The fact that a statute relates to an antecedent event does not require retrospective application. Statutes which further an existing remedy and which neither create new rights nor destroy existing rights apply retrospectively absent contrary legislative intent. The interest rate on workers' compensation awards and the period for computation of the interest is an incident of the right to compensation, not the right itself, and thus a change in the rate may be applied retroactively.

2. Computation of interest on workers' compensation awards paid after January 1, 1982, at the rate of 12% per annum does not violate the Contract Clause of the federal or state constitutions. Workers' compensation, although characterized as a liability arising out of a contract of employment, is provided by statute. Remedies for enforcement of a contract may be modified without impairing the contract, and the interest rate on a workers' compensation award relates to a remedy. Retroactive application of an increase in the rate does not alter the substance of the employment contract.

3. The state may increase the obligations under a private contract where it is necessary to meet a broad and pressing social need and where the increase is reasonably related to the goal. Retroactive application of an increase in the rate of interest on workers' compensation claims is reasonably related to the goal of compensating disabled workers. Such an increase does not violate either the Contract Clause or the Due Process Clause.

Affirmed.

Justice Levin, joined by Justice Kavanagh, dissenting, would hold that weekly workers' compensation payments that were due and payable before January 1, 1982, bear interest at 5% per annum until December 31, 1981, and thereafter at 12% per annum until paid, whether or not the award was entered before, on, or after January 1, 1982; and weekly payments that became or become due and payable on or after January 1, 1982,

bear interest at 12% per annum until paid even though the award was entered before January 1, 1982.

1. When the Legislature states a specific effective date for an act, it thereby indicates its intent to limit the retroactivity of the act. The amendment providing for an increase in the rate of interest paid on workers' compensation awards from 5% to 12% per annum specified that the effective date of the amendment was January 1, 1982. That showed a legislative intent to limit retroactivity by allowing interest at the higher rate only where the interest accrues on or after January 1, 1982. Interest that accrues before January 1, 1982, accrues at the rate of 5% per annum, and interest that accrues on or after January 1, 1982, accrues at the rate of 12% per annum. Neither the date of an award nor the date of a payment has any relation to the date the change in the rate of interest became effective.

2. Because interest is always payable for the period between the date a substantive right to payment accrues and the date the interest is awarded or paid, it is in a sense inherently retroactive. The Legislature apparently expressed this inherent characteristic by providing that "interest on the compensation shall be paid at the rate of 12% per annum from the date each payment *was* due, until paid".

3. There does not appear to be any appellate decision holding that a statutory increase in the rate of prejudgment interest or interest on a judgment should be given retroactive effect. All cases concerning an increase in a prejudgment interest rate and some cases concerning a postjudgment interest rate hold that interest accrues at the increased rate only from and after the effective date of the amendatory act. Other postjudgment increase in interest rate cases hold that interest accrues at the increased rate only on a judgment entered after the effective date of the act. The holding of the Court in this case that a statute increasing the interest rate is effective as to interest that accrued before the effective date of the amendatory act appears to be unique.

120 Mich App 135; 328 NW2d 15 (1982) affirmed.

OPINION OF THE COURT

1. WORKERS' COMPENSATION — INTEREST ON AWARDS.

Interest on workers' compensation awards entered by a hearing referee, the WCAB, or a court after January 1, 1982, is to be paid at the rate of 12% per annum from the date each payment was due (1981 PA 194, MCL 418.801[5]; MSA 17.237[801][5]).

2. WORKERS' COMPENSATION — INTEREST ON AWARDS.

The rate of interest to be paid on workers' compensation awards is an incident of the right to compensation, relating to the remedy of collecting the award when challenged; an increase in the rate furthers the remedy and neither creates new rights nor destroys existing rights and, absent contrary legislative intent, may be applied retroactively (1981 PA 194, MCL 418.801[5]; MSA 17.237[801][5]).

3. WORKERS' COMPENSATION — INTEREST ON AWARDS.

Retroactive application of an increase in the rate of interest on workers' compensation claims is reasonably related to the goal of compensating disabled workers, and such an increase does not violate either the Contract Clause or the Due Process Clause (US Const, art I, § 10; Const 1963, art 1, § 10; 1981 PA 194, MCL 418.801[5]; MSA 17.237[801][5]).

DISSENTING OPINION BY LEVIN, J.

4. WORKERS' COMPENSATION — INTEREST ON AWARDS.

*Weekly workers' compensation payments that were due and payable before January 1, 1982, should bear interest at 5% per annum until December 31, 1981, and thereafter at 12% per annum until paid, whether or not the award was entered before, on, or after January 1, 1982, and weekly payments that became or become due and payable on or after January 1, 1982, bear interest at 12% per annum until paid even though the award was entered before January 1, 1982 (1981 PA 194, MCL 418.801; MSA 17.237[801]).*

*Kelman, Loria, Downing, Schneider & Simpson* (by *James P. Harvey)* for plaintiff Selk.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Ray W. Cardew, Jr.,* Assistant Attorney General, for Self-Insurers' Security Fund.

*Fielstra, Flynn, Reider, Wierengo & Brown, P.C.* (by *Michael J. Flynn),* for plaintiff Kelly.

*Baxter & Hammond* (by *James R. Piggush)* for Muskegon County Road Commission and Kansas City Fire & Marine.

*Nelson, Payne, Parsons & Bouwkamp* (by *Stephen C. Bouwkamp)* for Department of Corrections and Michigan State Accident Fund.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Caleb B. Martin, Jr.,* Assistant Attorney General, for the Second Injury Fund.

BOYLE, J. We granted leave in these consolidated workers' compensation cases in order to determine whether 1981 PA 194, which amended MCL 418.801; MSA 17.237(801), requires that interest on workers' compensation awards made after January 1, 1982, the effective date of the amendment, is to be computed at a rate of 12% per annum with respect to payments which became due prior to January 1, 1982.

In each of these cases, the WCAB entered a post-January 1, 1982, award favorable to the employee and ordered the employer or carrier to pay 12% interest on the entire award. The Court of Appeals affirmed. 120 Mich App 135; 328 NW2d 15 (1982). We granted leave to appeal. 417 Mich 934 (1983). We affirm the Court of Appeals.

## I. FACTS

There is no dispute as to the facts in the instant cases. Therefore, we adopt the Court of Appeals statement of facts:

"A. *Furman*
"Plaintiff, Ralph Furman, suffered a work-related injury in 1961. He was awarded benefits for partial incapacity at that time. In 1973, he petitioned for total and permanent disability benefits alleging industrial loss of use of both legs and incurable insanity. He presented the testimony of a psychiatrist which sup-

ported his claim. Defendants failed to present any contradictory evidence, whereupon in January, 1973, the hearing referee made a finding of total and permanent disability on the basis of plaintiff's incurable insanity. That decision was not appealed.

"In June, 1976, plaintiff's 800-week conclusive presumption period ended. MCL 418.351; MSA 17.237(351). At that time, defendants discontinued paying benefits, whereupon plaintiff petitioned for a factual determination of permanent and total disability. At the hearing, defendants presented expert testimony concerning plaintiff's mental condition. Plaintiff presented contradictory evidence. The hearing referee found that there had been no material change in plaintiff's condition since the original determination of incurable insanity was made and that plaintiff's benefits should be resumed. Defendants appealed that decision to the Workers' Compensation Appeal Board.

"Defendants did not deny that plaintiff's condition remained unchanged after the 1973 decision. Rather, they argued that the evidence conclusively established that plaintiff had never been incurably insane, under either the definition of insanity which existed at the time the 1973 award was entered or the definition which was established thereafter.

"In a split decision, the board affirmed the hearing referee's decision by an order entered on January 14, 1982.

"B. *Selk*

"Plaintiff Selk filed a petition for benefits on July 27, 1978, claiming that she injured her hips in a work-related incident in January, 1978, and that thereafter her condition was aggravated by a further work-related incident. Contradictory evidence was presented at the hearing with plaintiff and her expert testifying that her injury was work-related. Defendant's expert testified that plaintiff's condition was related to her normal 'non-work related' activities of life. The hearing referee found in favor of plaintiff and entered an open award and ordered the payment of back benefits. By order entered January 8, 1982, the board affirmed the decision of the hearing referee.

"C. *Kelly*

"Plaintiff Kelly suffered a work-related back injury in January, 1974. Thereafter, defendants voluntarily paid benefits until plaintiff returned to work in November, 1975. Plaintiff quit his job in April, 1976, and filed a petition for benefits on November 11, 1976. Following a hearing held on April 26, 1978, the hearing referee found that plaintiff suffered a work-related injury in 1974. However, he refused to award benefits because he found that plaintiff did not have a compensable injury on April 21, 1976, the last day that he worked.

"By an order entered on January 15, 1982, the board reversed the hearing referee's decision. It found that plaintiff aggravated his pre-existing back injury while performing work for defendants after returning to work in 1975. It further found that plaintiff suffered disabling neck pain and headaches which resulted from the back injury. Therefore, it entered a retroactive award of compensation benefits from April 21, 1976, and thereafter until further order of the board." 120 Mich App 140-142.

## II. THE STATUTORY AMENDMENT

### A

While these appeals were pending before the WCAB, the Legislature enacted 1981 PA 194, which amended MCL 418.801; MSA 17.237(801) to provide a new fifth paragraph:

"(5) When weekly compensation is paid pursuant to an award of a hearing referee, the board, or a court, interest on the compensation shall be paid at the rate of 12% per annum from the date each payment was due, until paid."

The Legislature directed that the amendment "shall take effect January 1, 1982". Until December 31, 1981, the effective interest rate was 5%.

*Wilson v Doehler-Jarvis Division of National Lead Co,* 358 Mich 510; 100 NW2d 226 (1960).

The issue is whether 1981 PA 194 was intended by the Legislature to operate prospectively or retrospectively. We agree with the Court of Appeals conclusion that this case "does not even involve retrospective application". 120 Mich App 146. We find that the statute is plain, certain, and unambiguous, *Grand Rapids v Crocker,* 219 Mich 178, 182; 189 NW 221 (1922), and requires application, not interpretation.

The amendment provides that interest shall be paid from the date each payment was due. MCL 418.801(1); MSA 17.237(801)(1) provided prior to 1977 that compensation shall "become payable on the fourteenth day after the employer has notice or knowledge of the disability or death".

In 1977, the Legislature amended § 801 to further clarify when compensation is *"due"*. As of the time the amendment in issue was enacted the statute provided:

"Compensation * * * shall become *due and* payable on the fourteenth day after the employer has notice or knowledge of the disability or death". (Emphasis added.)

Against this backdrop the conclusion is compelling that 1981 PA 194 was unambiguously intended to award interest from the date payment "was due".

We find further support for our conclusion from the fact that legislative recognition of inflationary interest rates was not confined to the area of compensation awards.

In 1980, the Legislature provided for a change in the interest rate on money judgments which clearly provided for 6% interest to the effective

date of the act (June 1, 1980) and 12% thereafter.
MCL 600.6013; MSA 27A.6013. In the instant case,
the Legislature failed to limit the increase in
interest to the effective date of the statute and
instead employed language unequivocally stating
that the triggering event "was" an occurrence
antedating the effective date of the legislation.

Defendants correctly detail the history of the
reform efforts which led to the adoption of 12 acts
pertaining to workers' compensation approved on
December 30, 1981, and note that the Legislature
fixed an effective date of January 1, 1982, for 11 of
the 12 acts. However, in our view neither the
existence of a legislative concern for the financial
burdens on employers or reference to the effective
date of the act squarely meet the issue in this
case. The Legislature used the language "was
due". Unless this language is unclear, these obser-
vations are irrelevant to our task which is to give
effect to the plain meaning of the language used.
*Owendale-Gagetown School Dist v State Bd of Ed,*
413 Mich 1; 317 NW2d 529 (1982).

B

Moreover, even if we were to conclude that the
language used required construction, we would
nonetheless conclude that the board's application
of the legislation was correct.

As a matter of statutory construction, statutes
are presumed to operate prospectively unless the
contrary intent is clearly manifested. *In re Davis
Estate,* 330 Mich 647, 651-653; 48 NW2d 151
(1951). Moreover, the fact that the statute relates
to antecedent events does not, in itself, require a
finding that the statute operates retrospectively.
*Hughes v Judges' Retirement Bd,* 407 Mich 75, 85;
282 NW2d 160 (1979).

An exception to the general rule is recognized where a statute is remedial or procedural in nature. *Hansen-Snyder Co v General Motors Corp,* 371 Mich 480; 124 NW2d 286 (1963). Statutes which operate in furtherance of a remedy already existing and which neither create new rights nor destroy existing rights are held to operate retrospectively, unless a contrary legislative intention is manifested. Defendant argues that because it is the general rule that an act amending a specific act will be applied retroactively, *Rookledge v Garwood,* 340 Mich 444; 65 NW2d 785 (1954), it follows that a new provision, which does not amend an existing one, cannot be so applied. However, the *Rookledge* principle is also simply one of statutory construction. Thus, the fact that § 801 is a new provision does not preclude retroactive application where this is the clearly expressed intent of the Legislature.

As the Second Injury Fund concedes, this Court has held that interest rates relate to a remedy or mode of procedure. See *Ballog v Knight Newspapers, Inc,* 381 Mich 527, 535; 164 NW2d 19 (1969). While *Ballog* is not dispositive of the question in the instant case because it related to interest on a money judgment, we there quoted with approval language which characterized interest on a judgment in an action of trespass or trespass on the case for damages to person or property as "not of the substance of the right of action but exclusively an incident attached thereto by legislative fiat after such right has been adjudicated. The period for computation of such interest is in the same category".

Thus, unless we accept the defendants' position that the rights in this case are contractual in nature and that a retroactive application of the

statute would impair defendants' vested rights, the conclusion must follow that interest is but an incident and not the essence of a right or liability.

## III. CONTRACT IMPAIRMENT

We recognize the general rule accepted by a majority of jurisdictions that legislative changes in the rate of interest will not be retroactively applied to vary an existing contractual obligation, express or implied, fixing the rate of recoverable interest. Anno: *Retrospective application and effect of statutory provision for interest or changed rate of interest,* 4 ALR2d 932.

We are persuaded nonetheless that in the instant case interest may be awarded from the date payment was due without running afoul of the constitutional provision against impairment of contract. US Const, art I, § 10; Const 1963, art 1, § 10.

While this Court has characterized workers' compensation as a liability arising out of the contract of employment, we have nonetheless consistently emphasized that workers' compensation is a matter of statutory grace. *Rookledge v Garwood, supra,* p 453; *Wilson v Doehler-Jarvis, supra; Solakis v Roberts,* 395 Mich 13; 233 NW2d 1 (1975).

In *Lahti v Fosterling,* 357 Mich 578, 584; 99 NW2d 490 (1959), the Court held that an amendment to the workers' compensation act which eliminated a limitation on medical benefits had retroactive effect. The Court considered the theory, also advanced by defendants here, that "since the workmen's compensation act is statutory, and since the employment is based upon a contract, for the legislature to change the remedies would be a violation of the rights of the parties and the contract".

In rejecting this conclusion the Court quoted with approval the following language:

" 'It is true that this Court has held, we believe correctly, that the basis of liability of employers under the Workmen's Compensation Statutes, is contractual. But we cannot say that such contractual relationship or liability necessarily precludes a subsequent Legislature from effecting changes in the Workmen's Compensation laws. Those who enter into such contractual relationships do so with knowledge of the right and power of the Legislature to enact any new law relating to the subject matter, not in conflict with any constitutional provision, and must be presumed to have agreed to any such change.' " *Lahti, supra,* pp 594-595, quoting *Peak v State Compensation Comm'r,* 141 W Va 453, 459; 91 SE2d 625 (1956).

In *McAvoy v H B Sherman Co,* 401 Mich 419, 457; 258 NW2d 414 (1977), we held constitutional the application of MCL 418.862; MSA 17.237(862), which provided that no stay on appeal from an award entered by a referee was available with respect to 70% of the weekly benefit in cases involving injuries or appeals taken by employers before the effective date of the act. We recognized the contractual nature of the relationship while reiterating the principle "that remedies for the enforcement of a contract may be modified without violating the impairment of contract clauses".

We conclude that the interest rate on a compensation award relates to an additional remedy, and that retroactive application of the statute does not alter the substance of the relationship. See *Guardian Depositors Corp v Brown,* 290 Mich 433; 287 NW 798 (1939).

Defendant correctly contends that the characterization of a particular legislative action as remedial is not a talisman which forecloses further

analysis of a constitutional claim. The Contract Clause retains viability as a restriction on legislative action. The state may, however, alter the terms of a private contract to either lighten or increase obligations, save where its activities constitute a substantial alteration of the terms of a contract. In the latter event, the alteration is permissible if the legislation is necessary to meet a broad and pressing social need and is reasonably related to that goal. *Allied Structural Steel Co v Spannaus,* 438 US 234; 98 S Ct 2716; 57 L Ed 2d 727 (1978).

Certainly the change involved here is not of the magnitude of the pension fund charge found defective in *Allied Structural Steel, supra.* Moreover, if it is conceded that the retroactive application of the 12% interest rate is a "substantial alteration" of the contract, we think it abundantly clear that compensation for worker disability is legislation for the public welfare. *Energy Reserves Group, Inc v Kansas Power & Light Co,* 459 US 400; 103 S Ct 697; 74 L Ed 2d 569 (1983). It is also clear that the act is an attempt to remedy a serious social problem, depreciation of the value of the award as a result of the escalation in the interest rate over the period preceding final determination.

Nor can we say that the legislative solution to the problem is not reasonably related to the goal sought to be obtained. We cannot say that the Legislature acted irrationally in considering that 12% interest was an appropriate compensation on an award ultimately deemed to have been rightfully due 14 days from notice of the injury. Defendants do not dispute plaintiffs' assertion that for two years prior to the date of enactment, governmental investment instruments provided interest generally in excess of 12%.

Defendants contend that § 801 is irrational because to the extent that the marketplace interest rate was less than 12% during the period before final judgment, plaintiffs will receive a windfall. We note that the converse is true for those periods in which the 12% interest rate was less than that obtainable in the marketplace. Moreover, if defendants' contentions were accepted and the statute was applied only to payments which are due on or after January 1, 1982, it is foreseeable that some number of workers would not, because of the length of the appeal process, receive 12% interest until 1984, 1985, or later. The wisdom of retroactive application of the 12% interest rate is, in any event, a matter confined to the exclusive judgment of the Legislature. That in any given case the statute may operate imperfectly does not authorize this Court to invalidate an act which is reasonably related to a permissible legislative objective. *Shavers v Attorney General,* 402 Mich 554, 612; 267 NW2d 72 (1978).

## IV. DUE PROCESS

Having found that the statute is reasonably related to a legitimate state interest for purposes of the impairment of contract claim, we conclude that defendants' due process claim is likewise without merit. In *Lahti v Fosterling, supra,* 357 Mich 591-592, we quoted from *Matter of Hogan v Lawlor & Cavanaugh Co,* 286 App Div 600; 146 NYS2d 119 (1955), in holding:

" 'The due process clause of the State and Federal Constitutions does not freeze the burden of compensation liability as of the date of the occurrence of an industrial accident, beyond the power of legislative change. In carrying out its social purpose, the Legisla-

ture has the power to increase the burden on the employer for disability or expenses occurring or continuing after the date of the enactment of the amendatory statute, even though the accident which gave rise to the disability or expenses had occurred prior to that time.' "

## V. CONCLUSION

For the reasons stated, we conclude that where an employer pays compensation pursuant to an award of a hearing referee, the WCAB, or a court which is entered after January 1, 1982, interest shall be paid at 12% from the date each payment was due. As to the remaining issues, the judgment of the Court of Appeals is affirmed for the reasons stated in its opinion. No costs, a public question being involved.

WILLIAMS, C.J., and RYAN, BRICKLEY, and CAVANAGH, JJ., concurred with BOYLE, J.

LEVIN, J. *(dissenting).* The question presented is whether and to what extent workers' compensation weekly payments that were due and payable before, on, or after January 1, 1982, the effective date of 1981 PA 194,[1] which increased the interest

[1] "An act to amend section 801 of Act No. 317 of the Public Acts of 1969, entitled as amended 'An act to revise and consolidate the laws relating to worker's disability compensation; and to repeal certain acts and parts of acts,' as amended by Act No. 302 of the Public Acts of 1977, being section 418.801 of the Compiled Laws of 1970."

*"The People of the State of Michigan enact:*

"Section 1. Section 801 of Act No. 317 of the Public Acts of 1969, as amended, being section 418.801 of the Compiled Laws of 1970, is amended to read as follows:

"Sec. 801. (1) Compensation shall be paid promptly and directly to the person entitled thereto and shall become due and payable on the fourteenth day after the employer has notice or knowledge of the disability or death, on which date all compensation then accrued shall be paid. Thereafter compensation shall be paid in weekly installments. Every carrier shall keep a record of all payments made under this act and of the time and manner of making the payments and shall furnish reports, based upon these records, to the bureau as the director may reasonably require.

rate on payments paid pursuant to an award from 5% to 12% per annum, bear interest at the higher rate.

The majority holds that the increase in interest rate is fully retroactive to the date each weekly payment was due *if* the compensation is paid pursuant to an award of a hearing referee, the WCAB, or a court "entered after January 1, 1982".[2]

We would hold (i) that weekly payments that were due and payable *before* January 1, 1982, bear interest at 5% until December 31, 1981, and thereafter bear interest at 12% until paid whether or not the award was entered before, on, or after January 1, 1982, and (ii) that weekly payments that became or become due and payable *on or after* January 1, 1982, bear interest at 12% until paid even though the award was entered before January 1, 1982.

## I

Since 1943, the workers' compensation act has

"(2) If weekly compensation benefits, accrued weekly benefits, medical bills, or travel allowance are not paid within 30 days after becoming due and payable in cases where there is not an ongoing dispute, $50.00 per day shall be added and paid to the worker for each day over 30 days in which the benefits, medical bills, or travel allowance are not paid. Not more than $1,500.00 in total may be added pursuant to this subsection.

"(3) For purposes of rate-making, daily charges paid under subsection (2) shall not constitute elements of loss.

"(4) An employer who has notice or knowledge of the disability or death and fails to give notice to the carrier shall pay the penalty provided for in subsection (2) for the period during which the employer failed to notify the carrier.

"(5) When weekly compensation is paid pursuant to an award of a hearing referee, the board, or a court, interest on the compensation shall be paid at the rate of 12% per annum from the date each payment was due, until paid.

"Section 2. This amendatory act shall take effect January 1, 1982.

"This act is ordered to take immediate effect.

"Approved December 30, 1981." 1981 PA 194.

[2] *Ante,* p 15.

provided that workers' compensation benefits become payable 14 days after the employer has notice or knowledge of the disability or death, on which date all compensation then accrued shall be paid, and that thereafter benefits are payable weekly.[3]

In 1960, this Court held that interest at the legal rate of 5% per annum was payable on a judgment entered by the circuit court on a workers' compensation award.[4] Since that decision, interest has been required to be paid by employers and insurers at 5% on workers' compensation awards without regard to whether a judgment has

---

[3] As originally enacted, subsequently amended, and re-enacted, the workers' compensation act has provided for a delay in the commencement of compensation.

The original 1912 act provided that no compensation shall be paid for an injury that does not incapacitate the worker for at least two weeks, that compensation shall begin on the 15th day after injury, and that compensation shall be computed from the date of injury if the disability continues for at least eight weeks. 1912 (1st Ex Sess) PA 10; 1915 CL 5433. Two weeks was changed to one week, the 15th day to the 8th day, and 8 weeks to 6 weeks by 1919 PA 64; 1929 CL 8419, and 6 weeks to 4 weeks by 1943 PA 245; 1948 CL 412.3; MSA 17.153, and 4 weeks to 2 weeks by 1965 PA 44, now § 311 of the present act; 1969 PA 317, § 311; MCL 418.311; MSA 17.237(311).

In 1943 the following provision was added to the act:

"Compensation shall be paid promptly and directly to the person entitled thereto and shall become payable on the fourteenth day after the employer has notice or knowledge of the disability or death, on which date all compensation then accrued shall be paid. Thereafter compensation shall be paid in weekly installments." 1943 PA 245; 1948 CL 413.5; MSA 17.178.

The language of the 1943 act was re-enacted as the opening sentences of § 801 of the present act. 1969 PA 317, § 801; MCL 418.801; MSA 17.237(801). In 1977, § 801 was amended to change the expression "shall become payable on the 14th day" to "shall become due and payable on the 14th day", and new language (see fn 1) was added as subparagraphs (2)-(4).

[4] This Court held that the circuit court was authorized to allow the legal rate of interest (5%) when it enters a judgment on a compensation award pursuant to part 3, § 13 of the act (MCL 413.13; MSA 17.187; subsequently re-enacted as § 863 of the present act, MCL 418.863; MSA 17.237[863]). *Wilson v Doehler-Jarvis Division of National Lead Co,* 358 Mich 510; 100 NW2d 226 (1960).

been sought from or entered by a circuit court.[5]

In December, 1981, the Legislature passed a number of acts amending the workers' compensation act.[6] One of those acts (1981 PA 194) amended § 801 (providing that compensation becomes payable on the 14th day and thereafter is payable weekly) by the addition of the following language increasing the interest rate from 5% to 12% per annum:

"(5) When weekly compensation is paid pursuant to an award of a hearing referee, the board, or a court, interest on the compensation shall be paid at the rate of 12% per annum from the date each payment was due, until paid".

The amendatory act, signed by the Governor on December 30, 1981, with "immediate effect", stated that "[t]his amendatory act shall take effect January 1, 1982".[7]

The opinion of the Court states that the words, in the amendatory act, "from the date each payment was due", are "plain, certain and unambiguous"[8] and concludes that interest at 12% is payable retroactively from the weekly dates that compensation "was due" if the award was entered after January 1, 1982—in *Selk* from weekly dates beginning in 1978, and in *Furman* and *Kelly* from weekly dates beginning in 1976.

The majority also reads a pre-January 1, 1982 award limitation into the act although the amendatory language does not "plainly", "certainly", or

---

[5] See *Drake v Norge Division, Borg-Warner Corp,* 367 Mich 464; 116 NW2d 842 (1962); *Solakis v Roberts,* 395 Mich 13, 22; 233 NW2d 1 (1975).

[6] See fn 32.

[7] The full text of § 801, as set forth in the 1981 amendatory act, is set forth in fn 1.

[8] *Ante,* p 8. See fn 9 for text.

"unambiguously" provide that it is a prerequisite to the accrual of interest at the higher 12% rate that the award be entered on or after January 1, 1982. It reads the amendatory language as if it included the words "entered after January 1, 1982":

"When weekly compensation is paid pursuant to an award of a hearing referee, the board, or a court *[entered after January 1, 1982]*, interest * * * shall be paid at the rate of 12% per annum from the date each payment was due, until paid." (Bracketed words and emphasis supplied.)

The opinion of the Court does not state a reason for reading a pre-January 1, 1982 award limitation into the act.[9]

---

[9] A pre-January 1, 1982 award limitation might be seen by the majority as providing the January 1, 1982 effective date with meaning; but see fn 14.

Also, by affirming the Court of Appeals—which read such a limitation into the act (see fn 17)—the majority can adhere to "plain meaning", "unambiguous language" analysis, which might appear anomalous if the Court of Appeals and this Court both state that the language of the amendatory act is clear and unambiguous and yet reach opposing conclusions regarding the meaning of the effective date language. The Court of Appeals said:

"These two provisions read together compel a finding that the amendment *clearly and unambiguously* requires that for all awards made after January 1, 1982, the 12% interest rate be computed by referring to the date payment became due without regard to the fact that payment may have become due prior to January 1, 1982. Since the language of the statute is *clear* and *unambiguous,* further interpretation is unnecessary." *Selk v Detroit Plastic Products,* 120 Mich App 135, 143; 328 NW2d 15 (1982).

The majority states:

"We find that the statute is plain, certain and *unambiguous, Grand Rapids v Crocker,* 219 Mich 178, 182; 189 NW 221 (1922), and requires application, not interpretation. (Emphasis supplied.) *Ante,* p 8.

"Against this backdrop the conclusion is compelling that 1981 PA 194 was *unambiguously* intended to award interest from the date payment 'was due'." (Emphasis supplied.) *Ante,* p 8.

"Unless this language is *unclear,* these observations are irrelevant to our task which is to give effect to the *plain meaning* of the language used." (Emphasis supplied.) *Ante,* p 9.

## II

An act of the Legislature that is given immediate effect "takes effect" when it becomes a law. If it is not given immediate effect, it becomes effective 90 days after the end of the legislative session.[10]

Some acts, however, state a specific effective date (i) between the "immediate effect" date and the 90th day, or (ii) after the 90th day. When the Legislature states a specific effective date, it thereby indicates its intent to limit the retroactivity of the act.

It appears, because a pre-January 1, 1982 award limitation has been read into the act, that the majority reads the January 1, 1982 specific effective date as evidencing a legislative intent to limit the retroactivity or effectiveness of the amendment to payments of compensation pursuant to an award entered after January 1, 1982. We would read the specific effective date as evidencing a legislative intent to limit the retroactivity by allowing interest at the higher rate only where the interest accrues on or after January 1, 1982.

## A

The amendatory act is concerned with the rate of interest. The amendatory act provides for an increase in the rate of interest from 5% to 12% per annum. The specific effective date concerns the date that the change in the rate of interest shall

---

See also fns 14 and 16.

[10] "No act shall take effect until the expiration of 90 days from the end of the session at which it was passed, but the legislature may give immediate effect to acts by a two-thirds vote of the members elected to and serving in each house." Const 1963, art 4, § 27.

become effective. The date stated is January 1, 1982.

We conclude that interest that accrues before January 1, 1982, accrues at the 5% rate, and that interest that accrues on or after January 1, 1982, accrues at the 12% rate.

## B

Neither the date of the award nor the date of payment[11] has any homology with the date the change in interest rate becomes effective. The decision of the majority to make the date of the award determinative of entitlement to an increase in the interest rate will produce asymmetric and adventitious results.

The amendatory act provides that interest is payable at 12% from the date each payment is due when "compensation is paid pursuant to *an award of* a hearing referee, the board, or a court". (Emphasis supplied.)[12]

Most awards are "awards of" a hearing referee or the WCAB. It is rare for a court to make or enter an award. Also, although the WCAB may, as in *Kelly,* award compensation denied by a hearing referee, that is the exception. Ordinarily, as in *Selk* and *Furman,* a hearing referee's award is affirmed by the WCAB.[13] A determination by the WCAB is left undisturbed when the Court of Appeals, or both the Court of Appeals and this Court, deny leave to appeal or affirm the WCAB after a grant of leave to appeal. It is unusual for a court to award compensation.

It appears, under the majority construction stat-

---

[11] See text accompanying fns 18-19.

[12] See fn 1 and text accompanying fn 7.

[13] See *McAvoy v H B Sherman Co,* 401 Mich 419, 439; 258 NW2d 414 (1977).

ing a pre-January 1, 1982 award limitation, that where an award was entered before January 1, 1982, and an appeal was thereafter taken that is still pending, interest will accrue at 5%—during the 2-1/3 years or longer the appeal has been pending—on weekly installments that have or shall become due and payable on or after January 1, 1982.[14]

Similarly, under the majority construction, it appears that if a referee should at some future date, say, a year from next week, order that payment of compensation be stopped[15] on a pre-January 1, 1982 "award of" a hearing referee or the WCAB and that order were to be subsequently reversed by the WCAB or a court, interest would only be payable at 5% for the period during the pendency of the appeal because the award, pursuant to which "compensation is paid", would, upon reversal of the stop order, continue to be a pre-January 1, 1982 award.[16]

---

[14] This result might be avoided by a decision holding that a denial of leave to appeal by the Court of Appeals or this Court transforms "an award of" a hearing referee or "an award of" the WCAB into "an award of" a court. Such a decision might, however, be inconsistent with the rule that a denial of leave to appeal does not intimate anything regarding the court's view of the merits of a decision. *Frishett v State Farm Mutual Automobile Ins Co,* 378 Mich 733, 734 (1966); *Great Lakes Realty Corp v Peters,* 336 Mich 325, 328-329; 57 NW2d 901 (1953); *Malooly v York Heating & Ventilating Corp,* 270 Mich 240, 247; 258 NW 622 (1935).

Adhering to the pre-January 1, 1982 award limitation and also—in the instant cases or in a later case—holding that a denial of leave to appeal transforms "an award of" a hearing referee or the WCAB into "an award of" a court might seem inconsistent with "plain" "unambiguous" meaning analysis. More importantly, such a holding would eliminate the pre-January 1, 1982 award limitation announced by the majority, and thus would deprive the January 1, 1982 specific effective date of meaning, because then all awards in all cases pending on appeal would become, upon denial or grant of leave to appeal, "an award of" a court.

See also fns 9 and 16.

[15] Such an order would be made pursuant to the procedures provided in 1979 AC, R 408.40.

[16] This result might be avoided by a decision holding that the

The Court reads a pre-January 1, 1982 award limitation into the act although it posits that the awards in *Selk, Furman,* and *Kelly* were entered after January 1, 1982. There are approximately one hundred cases being held in abeyance pursuant to orders entered by this Court where the award is "an award of" a hearing referee or the WCAB entered before January 1, 1982. There are a large number of pre-January 1, 1982 "award of" a hearing referee or the WCAB cases being held in administrative abeyance, *i.e.,* without formal orders of the Court.

This Court should not, in the instant post-January 1, 1982 award cases, decide whether the WCAB and the Court of Appeals[17] correctly read into the act a pre-January 1, 1982 award limitation. A ruling thereon is not necessary to decision in the instant cases.

## C

To limit the meaning of the January 1, 1982 effective date language so that it serves only to deny retroactivity of the 12% interest rate where

reversal of the referee's stop order by the WCAB or by a court thereupon transforms a pre-January 1, 1982 award into "an award of" the WCAB or a court.

See fns 9 and 14.

[17] The Workers' Compensation Appeal Board appears to have ruled in *Selk* that interest shall be computed at the higher 12% rate from the date each payment was due if the award was "granted after the effective date". *Selk v Detroit Plastic Products,* 1982 WCABO 1, 3.

The Court of Appeals affirmed, stating that "for all awards made after January 1, 1982, the 12% interest rate [shall] be computed by referring to the date payment became due without regard to the fact that payment may have become due prior to January 1, 1982". *Selk v Detroit Plastic Products,* fn 9 *supra,* p 143.

This Court affirms the Court of Appeals, stating that "where an employer pays compensation pursuant to an award of a hearing referee, the WCAB, or a court which is entered after January 1, 1982, interest shall be paid at 12% from the date each payment was due." *Ante,* p 15.

the award was paid before January 1, 1982, would be to deny the effective date language of meaning.[18] It would mean that the effective date language affects only an award—if there is such an award—paid after the Governor signed the amendatory act on December 30 and before the close of business the following day, December 31, 1981, where, despite payment, the issue is still open, pending on appeal, or under reservation of rights.[19]

## III

The opinion of the Court offers the following reasons for the conclusion that the increase in interest rate is retroactive where the award is entered after January 1, 1982:

(A) "[T]he statute is plain, certain and unambiguous". The amendatory act states that interest is payable at the 12% rate "from the date each payment *was* due, until paid". (Emphasis supplied.) The "conclusion is compelling that [the amendatory act] was unambiguously intended to award interest from the date payment 'was due' ".[20]

(B) The Legislature "failed to limit the increase in interest to the effective date of the statute"[21] as

---

[18] There is not likely to be a case where the award was entered before January 1, 1982, and was subsequently paid and is nevertheless presently pending on appeal.

[19] The effective date language was not needed to deny retroactivity to cases that had been closed by payment before the amendatory act became law. Surely, even absent a specific effective date, this Court would hold that interest did not accrue either at the old or the increased rate where the award had been paid—whether a day, or a month, or years—before December 30, 1981, when the amendatory act became law.

[20] *Ante,* p 8.

[21] *Ante,* p 9.

it did in amending § 6013[22] of the Revised Judicature Act, providing for the rate of interest on a money judgment. There the Legislature specifically provided that interest shall be calculated until the June 1, 1980 effective date of the amendatory act at the old 6% rate and thereafter at the new 12% rate.

(C) It appears from rules of statutory construction and this Court's decision in *Ballog v Knight Newspapers, Inc,* 381 Mich 527, 541; 164 NW2d 19 (1969), that "interest rates relate to a remedy or mode of procedure" and that "interest is but an incident and not the essence of a right or liability".[23]

A

In using the word "was" in the amendatory act, stating that interest shall be paid at the 12% rate "from the date each payment *was* due, until paid" (emphasis supplied), the Legislature was apparently expressing the proper time relationship between the date on which the right to the payment arose and the subsequent date that payment pursuant to an award would be made. Because interest, when payable at all, is always payable for the period between the date the substantive right to payment accrues and the date interest is awarded or is paid, interest is in a sense inherently retroactive. The use of "was" expresses that inherent characteristic of interest.

It has been said that "expressions of the plain meaning rule may be a kind of verbal table thumping to express or reinforce confidence in an interpretation arrived at on other grounds instead

[22] MCL 600.6013; MSA 27A.6013.
[23] *Ante,* pp 10, 11.

of a reason for it". 2A Sands, Sutherland Statutory
Construction (4th ed), § 46.01, p 49.[24]

## B

The specificity of § 6013 of the Revised Judica-
ture Act may have been occasioned by the need to
differentiate between actions based on written in-
struments and other actions in respect to the
increase in the interest rate.[25] The specificity does

[24] Similarly, see 3 Corbin, Contracts, § 542, p 108 ff.

[25] Section 6013 of the Revised Judicature Act read as follows before
it was amended by 1980 PA 134:

"Interest shall be allowed on any money judgment recovered in a
civil action, such interest to be calculated from the date of filing the
complaint at the rate of 6% per year unless the judgment is rendered
on a written instrument having a higher rate of interest in which
case interest shall be computed at the rate specified in the instrument
if such rate was legal at the time the instrument was executed. In no
case shall the rate exceed 7% per year after the date judgment is
entered. In the discretion of the judge, if a bona fide written offer of
settlement in a civil action based on tort is made by the party against
whom the judgment is subsequently rendered and the offer of settle-
ment is substantially identical or substantially more favorable to the
prevailing party than the judgment, then no interest shall be allowed
beyond the date the written offer of settlement is made." MCL
600.6013; MSA 27A.6013.

1980 PA 134 amended § 6013 of the Revised Judicature Act to read
as follows:

"(1) Interest shall be allowed on a money judgment recovered in a
civil action, as provided in this section.

"(2) For complaints filed before June 1, 1980, in an action involving
other than a written instrument having a rate of interest exceeding
6% per year, the interest on the judgment shall be calculated from
the date of filing the complaint to June 1, 1980 at the rate of 6% per
year and on and after June 1, 1980 to the date of satisfaction of the
judgment at the rate of 12% per year compounded annually.

"(3) For complaints filed before June 1, 1980, in an action involving
a written instrument having a rate of interest exceeding 6% per year,
the interest on the judgment shall be calculated from the date of
filing the complaint to the date of satisfaction of the judgment at the
rate specified in the instrument if the rate was legal at the time the
instrument was executed. However, the rate after the date judgment
is entered shall not exceed the following:

"(a) Seven percent per year compounded annually for any period of
time between the date judgment is entered and the date of satisfac-
tion of the judgment which elapses before June 1, 1980.

not, therefore, support either the inference drawn by the majority or the view that the Legislature intended that interest accrue at 6% on a tort judgment until June 1, 1980, but at 12% on disputed workers' compensation payments from 1976 in *Kelly* and *Furman* and from 1978 in *Selk*.

## C

The Court's reliance on rules of construction is not persuasive. Judge Richard Posner recently observed that Professor Llewellyn had correctly criticized the canons of construction by forcefully demonstrating "that for every canon one might bring to bear on a point there is an equal and opposite canon, so that the outcome of the interpretive process depends on the choice between paired opposites—a choice the canons themselves do not illuminate. (You need a canon for choosing between competing canons, and there isn't any.)" Posner, *Statutory Interpretation in the Classroom*

"(b) Thirteen percent per year compounded annually for any period of time between the date judgment is entered and the date of satisfaction of the judgment which elapses after May 31, 1980.

"(4) For complaints filed on or after June 1, 1980, interest shall be calculated from the date of filing the complaint to the date of satisfaction of the judgment at the rate of 12% per year compounded annually unless the judgment is rendered on a written instrument having a higher rate of interest. In that case interest shall be calculated at the rate specified in the instrument if the rate was legal at the time the instrument was executed. The rate shall not exceed 13% per year compounded annually after the date judgment is entered.

"(5) If a bona fide written offer of settlement in a civil action based on tort is made by the party against whom the judgment is subsequently rendered and the offer of settlement is substantially identical or substantially more favorable to the prevailing party than the judgment, the court may order that interest shall not be allowed beyond the date the written offer of settlement is made." MCL 600.6013; MSA 27A.6013.

1980 PA 134 further provided:

"This amendatory act shall take effect June 1, 1980."

*and in the Courtroom,* 50 U Chi L Rev 800, 806
(1983).

It has also been observed:

"Judicial opinions are replete with vapid verbaliza-
tions of standards which purport to govern decision as
to the legal permissibility of retroactive application of
new law. On close examination, however, most of them
turn out to be little more than ways to restate the
problem. Probably the most hackneyed example of such
a rule is to the effect that a law cannot be retroactively
applied to impair vested rights." 2 Sands, Sutherland
Statutory Construction (4th ed), § 41.05, p 260.

In *Ballog,* the Court was considering a statute
that provided for the payment of prejudgment
interest. Theretofore, prejudgment interest was
obtainable as damages in some cases but not in
others.[26] If the statute were not retroactive, the
courts would have been obliged to continue to
draw increasingly fine and dubious distinctions
among cases respecting the allowance of prejudg-
ment interest until all actions filed before the
effective date of the statute had finally been de-
cided. Other courts that have dealt with the *Ballog*
question have similarly concluded that a statute
requiring payment of prejudgment interest should
be given retroactive effect.[27]

The statute considered in *Ballog* (1965 PA 240)
did not, in contrast with the amendatory act here
being construed, state a specific effective date. This

---

[26] See *Banish v City of Hamtramck,* 9 Mich App 381, 393 ff; 157
NW2d 445 (1968).

[27] *Dep't of Transportation v Delta Machine Products Co,* 162 Ga
App 252; 291 SE2d 104 (1982); *Noe v Chicago,* 56 Ill 2d 346; 307 NE2d
376 (1974); *Bartlett v Heersche,* 209 Kan 369; 496 P2d 1314 (1972);
*Roman Catholic Bishop of Manchester v Nyhan,* 110 NH 416; 270 A2d
906 (1970).

Court's conclusion in *Ballog* that such a statute should be construed to have retroactive effect is defensible. The rules of construction invoked in reaching that conclusion are, however, neither applicable nor persuasive in this case where the issue is whether an increase in the interest rate is applicable to interest that accrued before a specific effective date.

## IV

There does not appear to be any appellate decision[28] holding that a statute *increasing* the rate of either prejudgment interest or interest on a judgment should be given retroactive effect. All the cases concerning an increase in the prejudgment interest rate and some of the cases concerning an increase in the postjudgment interest rate hold that interest accrues at the increased rate only from and after the effective date of the amendatory act.[29] The other postjudgment increase in interest rate cases hold that interest accrues at the increased rate only on a judgment entered

[28] But see *Watertown v Sullivan,* 64 Misc 2d 493; 315 NYS2d 211 (1970).

[29] *White v St Louis SFR Co,* 602 SW2d 748 (Mo App, 1980); *Dependahl v Falstaff Brewing Corp,* 653 F2d 1208 (CA 8, 1981); *Ferry v Ferry,* 201 Neb 595; 271 NW2d 450 (1978); *Bd of Ed, Central School Dist No 5 v Sapsin,* 35 AD2d 973; 317 NYS2d 918 (1970); *In the Matter of Incorporated Village of Hempstead,* 33 AD2d 1036; 308 NYS2d 798 (1970); *Marx & Co, Inc v Diners Club, Inc,* 405 F Supp 1 (SD NY, 1975); *Kaufman v Chase Manhattan Bank, NA,* 370 F Supp 279 (SD NY, 1974); *Rachlin & Co v Tra-Mar, Inc,* 33 AD2d 370; 308 NYS2d 153 (1970); *Nelse Mortensen & Co, Inc v United States,* 305 F Supp 470 (ED Wash, 1969); *McBride v Superior Court, County of Maricopa,* 130 Ariz 193; 635 P2d 178 (1981) *(en banc); Camellia Corp v Cornell,* 162 Ga App 362; 291 SE2d 556 (1982); *Chicago, Rock Island & P R Co v Chicago B & Q R Co,* 55 FRD 209 (1972); *Ridge v Ridge,* 572 SW2d 859 (Ky, 1978); *Mayor & City Council of Baltimore v Kelso Corp,* 294 Md 267; 449 A2d 406 (1982); *Senn v Commerce-Manchester Bank,* 603 SW2d 551 (Mo, 1980); *Southeastern Freight Lines v Michelin Tire Corp,* 279 SC 174; 303 SE2d 860 (1983).

after the effective date of the act;[30] because post-judgment interest accrues only on the judgment and not from the date of injury or breach, these cases defer the effectiveness of the increase in interest rate to a date on or after the effective date of the amendatory act.[31] The majority's holding that a statute increasing the prejudgment/award interest rate is effective as to interest that accrued *before* the effective date of the amendatory act appears to be unique.

## V

This amendatory act, along with all but one of the other acts amending the workers' compensation act that were enacted in December, 1981,[32] concluded with the statement "[t]his amendatory act shall take effect January 1, 1982". The Legislature thereby evidenced its intention that the increase in the interest rate would not become effective before January 1, 1982, and would affect only interest that accrues on and after January 1, 1982.

This amendatory act, providing for an increase in interest rate, like acts providing for an increase in workers' compensation or other entitlement benefits, requires an increase in funding to pay for the increased cost. The Legislature generally indi-

---

[30] *Jones v Casey,* 445 So 2d 873 (Ala, 1983); *Dep't of Transportation v Delta Machine Products Co,* 162 Ga App 252; 291 SE2d 104 (1982); *Camellia Corp v Cornell,* 162 Ga App 362; 291 SE2d 556 (1982); *Bartlett v Heersche,* 209 Kan 369; 496 P2d 1314 (1972); *Sunray D X Oil Co v Great Lakes Carbon Corp,* 476 P2d 329 (Okla, 1970); *Manley v Sammons Enterprises, Inc,* 563 SW2d 919 (Tex, 1978).

[31] Even if prejudgment interest were allowed as damages, an increase in the postjudgment interest rate, without a corresponding change in the prejudgment interest rate, does not have retroactive effect because interest does not accrue on a judgment until it is entered unless the statute specifically provides otherwise.

[32] 1981 PA 192-203. Act 198, concerning redemption, was to take effect on January 1, 1984; it was amended by 1983 PA 151.

cates, by stating a specific effective date, its intent that amounts payable for prior periods shall not be affected by an increase in benefits,[33] taxes, or other governmentally mandated assessments. The Legislature did just that in the instant case in recognition that a change in a governmental benefit program requiring additional funding should not ordinarily be retroactive.

The Court should give meaning and effect to the legislative decision that the increase in interest rate would not be retroactive, but that it would be effective as to all interest that accrues on or after January 1, 1982.

## VI

The Court has not addressed the other issues raised by the appellants in *Kelly* and *Furman*. It should either address them or dismiss the grant of leave to appeal thereon as improvident.

KAVANAGH, J., concurred with LEVIN, J.

---

[33] See 1980 PA 357, §§ 2 and 3.