Neff, P.J.
 

 Plaintiff appeals by leave granted the decision of the Worker’s Compensation Appellate Commission (wcac) reversing the magistrate’s award of disability benefits. We reverse and remand for reinstatement of benefits based on the state average weekly wage at the time of injury.
 

 i
 

 Plaintiff was injured in the course of his duties as a volunteer ambulance driver with the Kingsley Area Emergency Ambulance Service, which he also served as president.
 
 *
 

 [1]
 
 The service is a private nonprofit entity, which is funded by subscriptions, fundraisers, and reimbursements, as well as subsidies from the village of Kingsley and the townships of Paradise and May-field. Plaintiff was not compensated by the service and was employed at a full-time paying job as a baker. Plaintiff’s injury caused him to be disabled from his full-time employment as well as from his volunteer duties as an ambulance driver.
 

 The service purchased a worker’s compensation insurance policy from The Accident Fund Company
 
 *595
 
 and paid a premium based on a hypothetical wage of $12,220 a year for plaintiff. After plaintiff sustained his injury, The Accident Fund Company voluntarily paid benefits based on the hypothetical wage.
 
 [2]
 

 Plaintiff sought additional benefits pursuant to § 161 of the Worker’s Disability Compensation (WDCA), MCL 418.161; MSA 17.237(161). After the magistrate awarded increased benefits on the basis of the plain meaning of § 161 to “compensate volunteer ambulance workers and attendants based upon the state average weekly wage at the time of injury,” the WCAC reversed, finding that postinjury amendments of § 161 were not applicable to plaintiff and that plaintiff was not entitled to benefits because he was not working for one of the governmental units specified in the statute.
 

 In response to plaintiff’s initial application for leave to appeal, this Court remanded the matter to the WCAC for determination of a proper benefit rate and whether § 372 of the WDCA, MCL 418.372; MSA 17.237(372), applied. The Court expressed no opinion regarding the commission’s interpretation of subsection 1 of § 161, MCL 418.161(1); MSA 17.237(1), before the 1994 amendment of that section.
 

 On remand, the commission rightfully expressed puzzlement concerning the application of § 372, because plaintiff did not receive any actual wages from the service and the application of that section would lead to no benefits.
 
 [3]
 
 The commission adopted
 
 *596
 
 its prior analysis of subsection 161(1) and found that plaintiffs service was outside the scope of the act and that he was not entitled to benefits. This Court granted plaintiffs application for leave to appeal from the order issued after remand.
 

 This Court’s review in worker’s compensation cases is limited to questions of law. Findings of fact made or adopted by the WCAC are conclusive on appeal, absent fraud, if there is any competent evidence in the record to support them.
 
 Layman v Newkirk Electric Associates, Inc,
 
 458 Mich 494, 498-499; 581 NW2d 244 (1998). A decision of the wcac is subject to reversal if the commission operated within the wrong legal framework or if the decision was based on erroneous legal reasoning.
 
 Bates v Mercier,
 
 224 Mich App 122, 124; 568 NW2d 362 (1997).
 

 n
 

 The wcac erred as a matter of law in determining that plaintiff was not covered by the wdca. At the outset of this case, plaintiff was voluntarily paid benefits based on the worker’s compensation insurance policy purchased by the service and issued by The Accident Fund Company. MCL 418.121; MSA 17.237(121) provides that any private employer not otherwise included in the act may assume the liability for compensation and benefits imposed by the act upon employers. The purchase and acceptance by an employer of a valid compensation insurance policy constitutes an assumption of liability that remains in effect while the policy is in force. Here, the employer purchased a worker’s compensation insurance policy, with an imputed wage for plaintiff of $12,220. The parties intended for plaintiff to be treated as an
 
 *597
 
 employee under the policy, otherwise there was no basis to contract for the policy. Plaintiff was, at the minimum, entitled to the benefits for which his employer had contracted.
 
 Martin v Raker,
 
 173 Mich App 23, 27-28; 433 NW2d 377 (1988). The commission erred as a matter of law in discontinuing all benefits.
 

 However, we decline to decide this case on the basis of § 121 and the existence of the policy obtained by the service, because we hold that the more specific provisions of § 161 apply. When two statutes involve the same subject matter, and one is specific while the other is only generally applicable, the specific statute prevails.
 
 Nat’l Center for Mfg Sciences v Ann Arbor,
 
 221 Mich App 541, 549; 563 NW2d 65 (1997).
 

 in
 

 At the time of plaintiffs injury, MCL 418.161(a); MSA 17.237(161)(a) included the following language in the definition of employee:
 

 A volunteer ambulance driver or attendant shall be considered to be an employee of the county, city, village, or township and entitled to the benefits of this act when personally injured in the performance of his duties as a volunteer ambulance driver or attendant and shall be considered to be receiving the state average weekly wage at the time of injury, as last determined under section 355, from the county, city, village, or township for purposes of calculating the weekly rate of compensation provided under this act.
 

 The act was amended in 1994 by 1994 PA 97 and 1994 PA 271, and the provisions concerning volunteer ambulance workers were included, in part, in subsection i, MCL 418.161(i); MSA 17.237(161)(i), which now provides:
 

 
 *598
 
 A volunteer licensed under section 20950 or 20952 of the public health code, Act No. 368 of the Public Acts of 1978, being sections 333.20950 and 333.20952 of the Michigan Compiled Laws, who is an on-call member of a life support agency as defined under section 20906 of Act No. 368 of the Public Acts of 1978, being section 333.20906 of the Michigan Compiled Laws, that contracts with or receives reimbursement from 1 or more counties, cities, villages, or townships shall be entitled to all the benefits of this act when personally injured in the performance of his or her duties as an on-call member of a life support agency whether the on-call member of the life support agency is paid or unpaid. An on-call member of a life support agency shall be considered to be receiving the state average weekly wage at the time of injury, as last determined under section 355, from the life support agency for the purpose of calculating the weekly rate of compensation provided under this act except that if the member’s average weekly wage was greater than the state average weekly wage at the time of the injury, the member’s weekly rate of compensation shall be determined based on the member’s average weekly wage.
 

 This amendment became effective after the date of plaintiff’s injury. Generally, a statute is presumed to operate prospectively unless the Legislature either expressly or impliedly indicates its intention to give retroactive effect.
 
 Selk v Detroit Plastic Products,
 
 419 Mich 1, 9; 345 NW2d 184 (1984). This general rule does not apply to statutes or amendments that are remedial in nature.
 
 Spencer v Clark Twp,
 
 142 Mich App 63, 67-68; 368 NW2d 897 (1985). A statute or amendment is remedial if it is designed to correct an existing oversight in the law or redress an existing grievance.
 
 Allstate Ins Co v Faulhaber,
 
 157 Mich App 164, 167; 403 NW2d 527 (1987). A statute or amendment is also remedial if it implies an intention to reform or extend existing rights.
 
 Id.
 

 
 *599
 
 The commission erred in finding that the 1994 amendment extending WDCA protection to volunteer on-call members of a government-funded life support agency did not constitute remedial legislation. The amendment was intended to correct an existing oversight in the law, which provided increased benefits for volunteers in life support positions working directly for a governmental entity, but failed to provide protection for similar volunteers working with an entity that contracts with governmental bodies to provide the same services. We conclude that the amendment was remedial and that the Legislature intended to apply it retroactively.
 
 Macomb Co Professional Deputies Ass’n v Macomb Co,
 
 182 Mich App 724, 731; 452 NW2d 902 (1990).
 

 The Court in
 
 Spencer
 
 dealt with a fact situation very similar to the one in this case and with an earlier amendment of § 161. There, the plaintiff worked part-time as a volunteer ambulance attendant for which he was paid $2 an hour. He was also employed full-time as a carpenter earning $4.50 an hour. He injured his back while working as an ambulance attendant and was disabled from performing both jobs. The plaintiff was injured in 1973, and § 161 was amended in 1976 to include for the first time voluntary ambulance drivers and attendants. In concluding that the amendment applied retroactively to the plaintiffs injury, this Court determined that § 161 is remedial legislation because it “did not create a substantive right in workers such as plaintiff to collect compensation benefits but instead expanded an already existing remedy.”
 
 Spencer, supra
 
 at 68.
 

 
 *600
 
 The
 
 Spencer
 
 Court determined that the plaintiff was entitled to compensation benefits based on the state average weekly wage, noting:
 

 In effect, volunteer ambulance drivers and attendants, along with volunteer fire fighters, safety patrol officers, and civil defense workers, are entitled to receive the maximum rate of compensation allowed by law if injured during the course of their public employment. See MCL 418.351(1); MSA 17.237(351)(1) and MCL 418.355(2); MSA 17.237(355)(2).
 
 [Spencer, supra
 
 at 67.]
 

 Also pertinent to the present case, the
 
 Spencer
 
 Court held:
 

 Like their counterparts in § 161(l)(a) who fight fires, patrol thoroughfares, and provide for the civil defense, volunteer ambulance attendants provide valuable services to counties and municipalities at a reduced rate. Many such volunteers, like plaintiff, derive the main source of their income from other occupations. Yet without the benefit of § 161(1), a volunteer injured during the course of his public employment who is thereby prevented from engaging in either of his jobs would receive compensation benefits based only on his rate of pay as a volunteer.
 
 [4]
 
 Section 161(l)(a) remedies that situation by allowing volunteers instead to receive compensation based on the state average weekly wage. It seems likely that the 1976 amendment was enacted to correct a legislative oversight; there is no good reason to think that the Legislature, prior to 1976, intended to exclude volunteer ambulance drivers and attendants from this coverage.
 

 Finally, the 1976 amendment is conducive to the public good. The services provided by volunteer ambulance drivers and attendants bear directly on the health and safety of those individuals in need of emergency medical attention.
 
 *601
 
 Society as a whole is benefitted [sic] both from the health and number of its members and by the knowledge that such emergency medical services are available in the event of crisis.
 
 [Spencer, supra
 
 at 68-69.]
 

 We can scarcely improve on the sound reasoning and conclusions of the
 
 Spencer
 
 Court; § 161 is remedial legislation, and the 1996 amendment is properly applied retroactively to plaintiff’s injury.
 

 Reversed and remanded for the entry of an award of benefits consistent with MCL 418.161(i); MSA 17.237(161)(i). We do not retain jurisdiction.
 

 [1]
 

 Plaintiff testified that he took the volunteer position of president of the organization because no one else wanted it and that it provided him no benefits or pay. When he went on the ambulance run on which he was injured and disabled, he did so reluctantly because he had to work in the morning. However, he went because no one else responded.
 

 [2]
 

 The payments from the insurance company were the only income he received after sickness and accident benefits from his primary employer ran out.
 

 [3]
 

 The parties agree that § 372 does not apply and that the Second Injury Fund therefore has no liability in this case.
 

 [4]
 

 4 Or, as in the instant case, a volunteer ambulance attendant would receive no compensation at all, if the interpretation of the wcac were to stand.